## Mary Jane Marchelewicz v. William Wehner

[618 A.2d 1293]

No. 91-185

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 25, 1992

Motion for Reargument Denied November 5, 1992

*Michael Marks* and *Pamela J. Fitzgerald* of *Lisman & Lisman*, Burlington, for Plaintiff-Appellant.

*James J. McNamara* of *McNamara, Fitzpatrick, McCormick & Mertz, P.C.*, Burlington, for Defendant-Appellee.

**Morse, J.** This appeal arises out of a contract dispute between plaintiff-buyer Mary Jane Marchelewicz and defendant-seller William Wehner for the sale of Chipman Point Marina on Lake Champlain. The parties executed a purchase and sale agreement, but the transaction was never completed. Buyer sued seller to recover her $25,000 deposit on the property, claiming breach of contract, or in the alternative, unjust enrichment. Seller countered that buyer's failure to give timely notice of her desire not to go forward with the sale justified retention of the deposit. The case proceeded before a jury, but the trial court directed a verdict for defendant on the notice issue. It entered judgment in defendant's favor after a bench trial on the equitable issue, concluding that seller had not been unjustly enriched. Buyer appeals these rulings. We reverse and remand for a new trial.

Buyer signed the purchase and sale agreement on August 4, 1988. The contract called for closing on or before September 30, 1988, and required a deposit of $25,000. It also included the following mortgage contingency:

> If, despite the best efforts of the Purchaser, the Purchaser is unable to obtain, by no later than . . . August 30, 1988, from a bank or similar financial institution . . . a written commitment for a mortgage loan to finance the acquisition of the Property, with funds to be available for disbursement on or prior to closing Date, . . . THE PURCHASER SHALL HAVE THE RIGHT TO TERMINATE THIS CONTRACT AS IT RELATES TO THE MORTGAGE CONTINGENCY BY GIVING NOTICE TO THE SELLER NOT LATER THAN . . . 72 HOURS AFTER SAID DATE AND TIME.

(Emphasis in original). Thus, according to the contract, buyer had to give notice not later than September 2, 1988, in order to terminate the contract. The "Terms and Conditions" printed on the form's reverse provided:

> Default: If the purchaser shall fail to complete said purchase as provided herein, or is otherwise in default, the Seller may terminate this Contract, retaining all deposit money as agreed and liquidated damages, or may pursue the Seller's rights to all legal and equitable remedies provided by law . . . .

The total purchase price was $625,000, and buyer sought financing for almost the entire amount. The agreement expressly provided that notices could be given orally. Because seller is deaf, buyer communicated exclusively with Calvin Robinson, seller's listing agent. Robinson drafted the agreement and retained the deposit.

During August 1988, buyer applied to commercial lenders at two banks for mortgage financing for the purchase. Unremarkably, both institutions required financial information about the marina before considering a loan. According to her testimony, she repeatedly asked Robinson during August for the records showing the historic financial performance of the marina. On August 29, 1988, because she had not received the pertinent records necessary for financing, Robinson prepared an "Addendum to Purchase and Sale Contract" which would have extended the deadline for satisfying the mortgage contingency until September 13, 1988. He obtained buyer's signature, but seller refused to sign it because he did not wish to extend the September 30 closing date.

Buyer continued her efforts to secure a loan after that date. She obtained a letter from a loan officer at the Vermont Federal Bank specifying the financial information he would require in order to process her loan application. Robinson brought the letter to seller and urged him to comply with the bank's request for information. Seller provided the financial information on September 20 or 21, but the loan request was denied because the cash flow from the business could not reasonably support the mortgage payments. Buyer requested release of her deposit, but seller declined.

Buyer testified that before the September 2 financing deadline, when she learned seller had not signed the extension agreement, Robinson urged her to continue trying to obtain financing for the purchase after the deadline "and see if we can't pull this together for September 30th." She replied, "If we do this without his signing, will my deposit be in jeopardy?" According to buyer, Robinson answered, "No."

Plaintiff argues that the trial court erred in directing a verdict for seller. We agree. Plaintiff produced enough evidence on the factual issues of Robinson's authority to bind seller as his agent and of "termination notice" to reach the jury.

■■ In determining the propriety of a directed verdict, this Court must view the evidence in the light most favorable to the nonmoving party, excluding any modifying evidence. See *Smith v. Gainer*, 153 Vt. 442, 445, 571 A.2d 70, 71 (1990). Buttressing deference to the nonmoving party in this case is the rule that courts should narrowly construe forfeiture clauses. See *Champlain Oil Co. v. Trombley*, 144 Vt. 291, 297, 476 A.2d 536, 539 (1984) (breach of a forfeiture provision must be more than "trivial or technical").

■ Whether Robinson's agency extended to the authority to bind the seller was not seriously contested at trial. Such a determination, however, is a question of fact proper for the jury's decision. *Estate of Sawyer v. Crowell*, 151 Vt. 287, 292, 559 A.2d 687, 691 (1989) ("existence and extent of an agent's authority is a question of fact"). Seller made all his communications with buyer through Robinson and, according to buyer, Robinson made representations and behaved as if he were speaking for seller. Because of this evidence, this factual issue should have been left to the jury.

■ On the issue of notice, the mortgage contingency provision was silent as to the specific words to be used to terminate the contract. A jury could find it reasonable for plaintiff to believe that she needed to do no more than she did in complying with the notice requirement to protect her deposit. If the jury believed that Robinson assured her the deposit would not be in jeopardy despite her failure to request termination on September 2, 1988 and encouraged her to continue to seek financing, it could conclude that seller had waived the time of notice under the mortgage contingency. 5 S. Williston, A Treatise on the Law of Contracts § 741, at 512–13 (3d ed. 1961) (time provision in a contract must be analyzed in terms of the actual intention of the parties to the agreement, as evinced by their conduct, and a breach of the time provision may be waived). Based on plaintiff's evidence, the jury could have determined that Robinson had been sufficiently informed in keeping with the purpose of the mortgage contingency provision. If Robinson assured her that her deposit was safe despite his principal's failure to sign the extension, the jury could reasonably conclude that the financing contingency notice was functionally met by the buyer's and Robinson's words and conduct. See *MacGowan v. Gaines*, 127 Vt. 477, 481, 253 A.2d 121, 123 (1969) (notice sufficient when "the person sought to be affected by it knows of the existence of the particular fact in question, or is conscious of having the means of knowing it"). It was improper to take this factual dispute from the jury.

*Reversed and remanded.*