## Lee Winey v. William E. Dailey, Inc.; Richard and Deborah Cutler, d/b/a Cutler Construction Co.; and Ray and Scott Racicot

[636 A.2d 744]

No. 91-559

Present: Gibson, Dooley, Morse and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned

Opinion Filed November 5, 1993

*David Putter* of *Saxer, Anderson, Wolinsky and Sunshine,* Montpelier, and *Lee Winey,* pro se, Shaftsbury, for Plaintiff-Appellee.

*Michael B. Clapp* of *Dinse, Erdmann & Clapp,* Burlington, for Defendant-Appellant.

**Dooley, J.** This action arises out of the construction of a home for plaintiff, Lee Winey, in the Town of Shaftsbury. Alleging breach of contract, fraud and consumer fraud, she sued the foundation contractor, William E. Dailey, Inc.; the general contractor, Cutler Construction Company, along with owner Richard Cutler and his wife, Deborah Cutler; and the plumbing, heating and electrical contractors. The case went to trial against the foundation and general contractors and resulted in a plaintiff's verdict for $70,000 against each defendant on the breach of contract theories. The jury also awarded $3,628 to the general contractor pursuant to a counterclaim for unpaid bills. Defendant Richard Cutler has appealed the verdict against him, alleging an error in the jury charge and that the amount of the verdict is not supported by the evidence. Plaintiff has cross-appealed, alleging with respect to Richard Cutler that the trial court erred in directing a verdict against her on her fraud-in-the-inducement claim and her similar consumer fraud claim, in its instructions on consumer fraud, and in its failure to award prejudgment interest. She also claims that the court erred in granting a directed verdict for Deborah Cutler. We affirm in part and reverse and remand in part.

For purposes of this opinion, we will refer to Richard Cutler and Cutler Construction Company as defendant. The construction business was not incorporated. Plaintiff alleged that it was a partnership or joint venture of Richard and Deborah Cutler. Richard Cutler argued that it was a sole proprietorship owned by him. The proper characterization of the business is relevant to the potential liability of Deborah Cutler.

Plaintiff and defendant entered into a written agreement on August 14, 1984 for defendant to serve as general contractor to build a house for plaintiff in accordance with certain blueprints. The anticipated completion date was March 10, 1985. The contract contained a provision that allowed plaintiff to terminate it if defendant's billing rose above $215,000. It provided defend-

ant a contractor's fee of $20,000 and required defendant to bill for material and subcontractor payments at cost. It also required plaintiff to reimburse for wages paid by defendant and set forth a wage rate by type of workers on the job.

When defendant's billings reached almost $300,000, plaintiff exercised her right to terminate the contract. Defendant had about $25,000 worth of work to do to complete the house.

Four breach of contract theories were submitted to the jury: (1) defendant failed to perform in accordance with the plans and specifications, and any authorized changes; (2) defendant failed to ensure that all labor and materials were of good quality; (3) defendant overbilled for labor and materials; and (4) defendant billed for labor and materials not used in the house construction. The jury found that defendant had breached the contract by deviating from plans and specifications, overbilling for labor or materials, and billing for labor or materials not used on the job. It found defendant did not fail to provide good quality labor and materials.

Certain fraud and consumer fraud claims also went to the jury. Plaintiff alleged that defendant had defrauded her by charging her for labor and materials not expended in the construction of the house and in overstating the cost of labor and materials. Plaintiff's consumer fraud claim was based upon the same allegations, and, additionally, that defendant had concealed deviations from specifications and construction done in a defective and unworkmanlike manner. The jury found for defendant on the fraud and consumer fraud claims.

## I.

### A.

We first address plaintiff's arguments that despite the verdict in her favor, she is entitled to a new trial on her fraud and consumer fraud claims and her claims against Deborah Cutler. First, plaintiff alleges that the court erred in failing to submit to the jury her fraud-in-the-inducement claim. Her claim was that defendant told plaintiff that he would complete the house for $215,000, exclusive of the cost of the foundation, although he personally believed he would charge her $270,000 plus the price of the foundation. She testified that she relied on the estimate in

deciding to hire defendant. The trial court refused to charge this theory because it found no evidence that defendant made a knowing misrepresentation of his estimate.

Plaintiff's claim to recovery on this theory is grounded in her position that misrepresentation of a construction estimate is actionable in these circumstances. Our cases have often drawn a distinction between a statement of fact and a statement of opinion, holding that misrepresentation of the former can be fraud, but misrepresentation of the latter cannot. See *Proctor Trust Co. v. Upper Valley Press, Inc.*, 137 Vt. 346, 350, 405 A.2d 1221, 1224 (1979) ("mere expressions of opinion" cannot be basis for fraud action).

■ This generalization is not, however, without exceptions. Misrepresentation of opinion can be the basis of a fraud claim if it is part of a scheme to defraud. See *White v. Pepin*, 151 Vt. 413, 419, 561 A.2d 94, 98 (1989). Plaintiff has alleged such a scheme here. She has claimed that defendant intentionally "low balled" the estimate in order to induce her to hire him. Once hired, he knew that she would be required to pay much more to complete the house and was unlikely to stop construction work before completion.

■■ Another exception also applies. With respect to promises to perform, we have held that misrepresentations about future actions can be fraudulent if defendant, at the time of the statement, intends to act differently from the promise. See *Union Bank v. Jones*, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980). A similar theory applies to opinions. The Restatement (Second) of Torts states the principle as follows:

> A representation of the state of mind of the maker or of a third person is a misrepresentation if the state of mind in question is otherwise than as represented. Thus, a statement that a particular person . . . is of a particular opinion or has a particular intention is a misrepresentation if the person in question does not hold the opinion or have the intention asserted.

Restatement (Second) of Torts § 525 comment c (1977). In this case, plaintiff alleged that defendant had a firm opinion about the cost of constructing the house but he intentionally stated an opinion $55,000 less in order to induce plaintiff to hire him. In

such circumstances, a misrepresentation of defendant's opinion can be actionable.

Defendant argues, however, that there is no factual basis for plaintiff's allegation. Since the trial court granted a directed verdict against plaintiff, in addressing this question, we must view the evidence in the light most favorable to plaintiff, excluding any modifying evidence. See *Marchelewicz v. Wehner,* 159 Vt. 310, 313, 618 A.2d 1293, 1294 (1992).

Plaintiff testified that defendant Richard Cutler told her that the job could be completed for $215,000 plus the cost of the foundation, and they modified some of the specifications to get down to that figure. Further, she testified that the right to terminate when bills reached $215,000 was inserted in the contract as a result of the estimate. She stated that she would not have entered the contract had she known the price would exceed $215,000.

Richard Cutler testified that he believed, at the time he entered the contract, that the price for his work would be $270,000. He did not provide an estimate for that amount to plaintiff.

■ Defendant relies on a number of worksheets that were exhibits and, in his view, reconciled the different numbers. The worksheets are ambiguous, and, in any event, are modifying evidence, which is not considered in ruling on a directed verdict motion. Viewing the evidence in the light most favorable to plaintiff, there was sufficient evidence to support her fraud-in-the-inducement theory, and it should have been submitted to the jury.

### B.

■ Plaintiff restates her argument under a consumer fraud theory. The Vermont Consumer Fraud Act prohibits "unfair or deceptive acts or practices in commerce," 9 V.S.A. § 2453(a), and authorizes the consumer to recover damages caused by the violation. *Id.* § 2461(b). The Act provides "a much broader right than common law fraud." *Poulin v. Ford Motor Co.,* 147 Vt. 120, 124, 513 A.2d 1168, 1171 (1986). Thus, plaintiff need only show that there was a representation likely to mislead her, that she interpreted it reasonably under the circumstances and that the misleading nature of the representation was likely to affect her

conduct or decision with respect to the contract. See *Peabody v. P.J.'s Auto Village, Inc.,* 153 Vt. 55, 57, 569 A.2d 460, 462 (1989). Plaintiff's case, if accepted by the jury, met this standard. We note that courts in other states with similar statutes have reached the same conclusion on comparable fact patterns. See *Quate v. Caudle,* 381 S.E.2d 842, 845 (N.C. Ct. App. 1989); *Eastlake Constr. Co. v. Hess,* 686 P.2d 465, 476 (Wash. 1984). The court erred in failing to submit this consumer fraud theory to the jury.[1]

## C.

Plaintiff's third claim is that the court erred in charging the jury on the consumer fraud theories that were submitted to the jury. The court submitted to the jury the following consumer fraud theories: (a) defendant intentionally charged for labor and material not used in the project; (b) defendant intentionally overcharged for labor and materials; (c) defendant concealed construction done in a defective and unworkmanlike manner; and (d) defendant concealed construction done in a manner that deviated from the specifications. The court instructed the jury on the general elements of consumer fraud and stated that it could find liability on any of the theories for which the elements were met.

Plaintiff argues that the court should have instructed on a statutory presumption that she believes applies to this case. The statute, titled "Evidence of fraud," provides:

> The failure to sell any goods or services in the manner and of the nature advertised or offered, or the refusal or inability to sell any goods or services at the price advertised or offered or in accordance with other terms or conditions of the advertisement or offer, creates a rebuttable presumption of an intent to violate the provisions of this chapter. No actual damage to any person need be alleged or proven for an action to lie under this chapter.

9 V.S.A. § 2457. Plaintiff argues the presumption applies to her claim that defendant overcharged for certain labor and mate-

---

[1] The court directed a verdict on this theory because it directed a verdict on the fraud-in-the-inducement theory. Plaintiff challenges this rationale, but our resolution of the fraud claims makes consideration of this challenge unnecessary.

rials, charged for labor and materials not used on the job and substituted inferior materials. In each case, plaintiff claims that defendant failed to sell goods or services in the manner and nature in which they were advertised and offered.

For purposes of analysis, we will assume that it is proper to charge the jury on the presumption when the issue of whether defendant engaged in unfair or deceptive practices is disputed in the evidence. See V.R.E. 301(c)(3); *In re Estate of Raedel,* 152 Vt. 478, 483 n.3, 568 A.2d 331, 333 n.3 (1989). In interpreting the statute, we look to its whole and to every part of it, its subject matter, the effects and consequences and the reason and spirit of the law. See *Mabee v. Mabee,* 159 Vt. 282, 284, 617 A.2d 162, 163–64 (1992).

We believe that the statute is narrower than plaintiff's reading. It is concerned with the contents of advertisements and offers—that is, elements of contract formation—and not conduct that is in breach of an existing contract. We have cautioned against confusing principles of contract with principles of fraud so that the elements of fraud are made out by a mere breach of contract. See *Bevins v. King,* 147 Vt. 203, 204–05, 514 A.2d 1044, 1045–46 (1986). Similarly, we are reluctant to conclude that the Legislature intended a mere breach of contract to raise a presumption of fraud.

Further, the last sentence of § 2457 indicates that the Legislature was concerned with circumstances in which there are no actual damages to a consumer. That language is important because, when the statute was enacted, the Consumer Fraud Act allowed only public enforcement by the Attorney General and not a private cause of action by the consumer. See 1967, No. 132, § 1 (adding 9 V.S.A. §§ 2457, 2461). The language of the statute addresses the classic bait-and-switch technique by which a seller induces consumer interest with an attractive offer and switches to other merchandise or terms, considerably less advantageous to the consumer. See Federal Trade Commission, Guides Against Bait Advertising, 16 C.F.R. §§ 238.0–238.4. In such instances, the damage to the consumer, if any, consists of the loss of a purchase opportunity of uncertain value. In enacting the presumption, the Legislature intended the statute to cover such conduct despite the absence of direct consumer injury.

For these reasons, we do not believe that § 2457 applies to defendant's billing practices in an ongoing contract even if he

overbilled, or billed for improper work, as plaintiff argued. There was no error in refusing to charge the statute.

Plaintiff also faults the jury instruction for its failure to tailor the discussion of consumer fraud to the individual facts and claims in the case. Defendant argues that plaintiff failed to pre- serve this claim. We agree with defendant.

The trial court conducted a two-day charge conference, the transcript of which is over 300 pages in length. Every word of the charge was debated in detail. At the end of the conference, the court asked for objections to the charge. Plaintiff's counsel made numerous specific objections, but did not object to the lack of detail in the consumer fraud charge. He concluded with an objection to language on "multiple counts," stating:

> And we have stated our basis yesterday. I won't reiterate it now, but I do want to reincorporate now all the arguments I made on those various points and I won't waste the Court's time further.

After the charge was given, the court declared that all prior objections were preserved and did not have to be repeated.

■ Civil Rule 51(b) requires a party to object "before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." The purpose of this requirement is to give the trial judge a last opportunity to correct the charge before the jury retires. See *Martell v. Universal Underwriters Life Ins. Co.*, 151 Vt. 547, 553, 564 A.2d 584, 588 (1989). We have criticized the trial court practice of declaring former objections as preserved because it eliminates the second look to catch errors. *Deyo v. Kinley*, 152 Vt. 196, 204 n.4, 565 A.2d 1286, 1291 n.4 (1989). More recently, in relation to the similar criminal procedure rule, V.R.Cr.P. 30, we stated:

> In this case, . . . the court, after instructing the jury, told the parties that any objection made *before* the jury charge would be considered preserved. We shall, therefore, reach the issue, but caution that such advice is contrary to the rule, and the court should require that any objections be placed on the record after the charge is given to the jury. The primary reason for the rule is to give the trial court one last opportunity to avoid an error. In addition, our re- view is made easier by such a practice because objections during a charge conference often are vaguely worded and

are interspersed during lengthy discussion. . . . By requiring post-charge objections, counsel is forced to focus on a succinct recitation of specific itemized objections enabling this Court to understand what defendant intended to preserve for appeal.

*State v. Wheelock,* 158 Vt. 302, 306, 609 A.2d 972, 975 (1992). The discussion is equally applicable in civil cases.

■ Plaintiff argues that the general objection made after the charge conference operated to properly preserve for review all of the issues raised during the two-day charge conference. We reiterate that we do not believe that a blanket reference made after the charge to arguments made before the charge, even if allowed by the trial court, complies with Civil Rule 51(b). We certainly do not accept the theory that such a blanket reference can cover another blanket objection to hundreds of pages of difficult-to-follow argument. As it is, we do not read the statement in question as making a blanket reference in this case. Plaintiff failed to object "distinctly" to the lack of specificity in the consumer fraud charge and to state the grounds of the objection. She cannot now challenge the charge in this Court. See *Poulin v. Ford Motor Co.,* 147 Vt. at 125, 513 A.2d at 1173.

### D.

Plaintiff's fourth claim is that the trial court erred in giving a directed verdict to Deborah Cutler on all counts.[2] Plaintiff argues pro se[3] that Deborah Cutler should be liable on all theories because the evidence showed that she was engaged in a joint venture with her husband.

Although defendant did business as Cutler Construction Company, the evidence showed that the business was a sole proprietorship owned by Richard Cutler. The written contract for the construction of the house was between plaintiff and Richard

---

[2] The fraud-in-the-inducement claim, and the related Consumer Fraud Act claim, were dismissed before the directed verdict for Deborah Cutler. Plaintiff has not specifically argued that these claims should be differentiated from the remaining claims against Deborah Cutler. Therefore, our discussion of the liability of Deborah Cutler covers all of these claims.

[3] Plaintiff submitted a pro se brief, solely on this point, apparently because her counsel would argue only that Deborah Cutler should be liable for restitution damages.

Cutler, doing business as Cutler Construction Company, and it was signed only by Richard Cutler. It provided an hourly rate for Richard Cutler when he was on the job, and obligated him to be on site a specific number of hours.

Plaintiff points to the involvement of Deborah Cutler in the business. The evidence, viewed in the light most favorable to plaintiff, showed that contract negotiations and signing took place in the Cutler home with Deborah Cutler providing "disarming, gracious hospitality." Deborah worked for the business, without compensation, as a bookkeeper. She paid bills and billed plaintiff for work and materials. The overbillings and billings for labor and material not expended on the job were prepared by Deborah Cutler. She assembled cost figures that Richard Cutler used as the basis for his quote to plaintiff.

A wife is not normally liable for breach of a contract by her husband unless she is a party to that contract. See *R. & E. Builders, Inc. v. Chandler*, 144 Vt. 302, 304–05, 476 A.2d 540, 542 (1984). She may be liable for fraudulent action if she is involved in it and benefits from it. See *Fireman's Fund Ins. Co. v. Knutsen*, 132 Vt. 383, 396, 324 A.2d 223, 232 (1974). In this case, however, the jury found against plaintiff on her fraudulent billing theories, and this finding necessarily exonerated Deborah Cutler.

■ Thus, plaintiff is left with the theory that Deborah Cutler was a joint venturer in the Cutler business. A joint venture is a special relationship of two or more parties "'to engage in and carry out a single business venture for joint profit.'" *Vermont Envtl. Bd. v. Chickering*, 155 Vt. 308, 317, 583 A.2d 607, 612 (1990) (quoting *Helfenbein v. Barae Inv. Co.*, 508 P.2d 101, 104 (Ariz. Ct. App. 1973)). Although not a formal partnership, it has many of the legal incidents of a partnership. See *Mislosky v. Wilhelm*, 130 Vt. 63, 69, 286 A.2d 267, 271 (1971). Thus, there must be an agreement to share in profits and losses, joint control or right to control, a joint proprietary interest in the subject matter and a community of interest in the performance of the common purpose. See 2 Z. Cavitch, Business Organizations § 41.05[1] (1993). The evidence falls short of reaching the level of necessary involvement by Deborah Cutler in Cutler Construction Company, and thus the grant of a directed verdict in her favor on the joint venture theory was proper.

Plaintiff's counsel offers an alternative theory that attempts to hold Deborah Cutler liable for part of the damages. This ar-

gument focuses on the jury's verdict that the breach of contract damages included $3,000 for overcharges for labor and material and $500 for labor and material not expended on the job. It relies on the fact that Deborah Cutler prepared these bills. She also had the power to withdraw money from the business account and did so periodically to pay household expenses. From these facts, plaintiff's counsel argues that plaintiff should have been able to recover the $3,500 from Deborah Cutler on a theory of restitution based on unjust enrichment.

Although labeled as breach of contract damages, these amounts were actually restitution damages. See 5 Corbin on Contracts § 1107, at 573 (1964). The issue is whether plaintiff's theory of unjust enrichment is sufficient to allow recovery from Deborah Cutler. When a person receives money to which another person "'in justice and good conscience is entitled,'" the law creates an implied promise to repay the money to avoid unjust enrichment. *Hagadorn v. Durgin & Browne, Inc.*, 130 Vt. 305, 307, 292 A.2d 255, 257 (1972) (quoting B. Shipman, Common Law Pleading § 59, at 161 (3d ed. 1923)). This is an application of the general principles of quasi contract to the transfer of money. See generally *Center v. Mad River Corp.*, 151 Vt. 408, 412, 561 A.2d 90, 93 (1989) (elements of quasi-contract recovery). It is covered by an action in assumpsit for money had and received. See *Atlantic Coast Line R.R. v. Florida*, 295 U.S. 301, 309 (1935); *Siegel Oil Co. v. Gulf Oil Corp.*, 701 F.2d 149, 152 (Temp. Emer. Ct. App. 1983).

In order to recover from Deborah Cutler, however, plaintiff must show that she has "money actually received and wrongfully withheld." *Coast Trading Co. v. Parmac, Inc.*, 587 P.2d 1071, 1076 (Wash. Ct. App. 1978). At best, plaintiff showed that Deborah Cutler had access to the funds and may have used them for household expenses that benefited her in part. Without ruling on whether plaintiff could recover from Deborah Cutler if she showed that Deborah Cutler actually received the money involved, there is no proof of actual receipt in this case. The court did not err in refusing to submit the restitution claim against Deborah Cutler to the jury.

## E.

Plaintiff's last argument is that the court erred in failing to award her prejudgment interest.[4] The court refused to award interest for the period between the date of improper construction of the house and the date of the judgment. It found that the amounts awarded for repair of the construction to comply with the plans were determined as of the date of trial so that an award of interest from the date of construction would result in double recovery.

Some of our earlier cases suggest that prejudgment interest is awarded as a matter of right in breach of contract actions. See *Eccomunity, Inc. v. Lussier,* 147 Vt. 276, 279, 514 A.2d 711, 714 (1986); *VanVelsor v. Dzewaltowski,* 136 Vt. 103, 106, 385 A.2d 1102, 1104 (1978). However, our more recent decisions have announced a general rule, applicable in either tort or contract actions, that interest is awarded as of right "where damages are liquidated or readily ascertainable." *P.F. Jurgs & Co. v. O'Brien,* 160 Vt. 294, 304, 629 A.2d 325, 331 (1993); see also *Newport Sand & Gravel Co. v. Miller Concrete Constr., Inc.,* 159 Vt. 66, 71, 614 A.2d 395, 398 (1992) (contract); *Turcotte v. Estate of LaRose,* 153 Vt. 196, 199, 569 A.2d 1086, 1088 (1989) (tort). In this case, the damages were not readily ascertainable and were the subject of conflicting expert testimony. As discussed *infra,* the parties dispute how the jury could arrive at the damages it awarded. Thus, we do not believe plaintiff was entitled to interest on most of her damages as a matter of right.

In breach of contract cases, damages are to be measured at the time of breach with interest to the date of judgment. See *Appropriate Technology Corp. v. Palma,* 146 Vt. 643, 646, 508 A.2d 724, 726 (1986). In this case, however, the trial court determined that damages were measured at the time of trial by the expert witnesses on which the jury relied. We agree that it was within the court's discretion to deny prejudgment interest for those items.[5]

---

[4] This issue covers both the judgment against Richard Cutler and the judgment against the foundation contractor, William E. Dailey, Inc. The foundation contractor has not participated in this appeal. Our mandate addresses the judgment against it, however, because of plaintiff's argument on this issue.

[5] Plaintiff argues alternatively that she is entitled to damages for loss of use of

The jury also awarded damages of $3,500 for defendant's overbilling of labor and materials and billing for labor and materials not used in the construction of plaintiff's home. These amounts were readily ascertainable, and there was no risk of double recovery. It was error to fail to award prejudgment interest on these amounts.

## II.

## A.

 Defendant has also appealed on two points. The first is that the charge was erroneous in requiring the jury to allocate damages "proportionately" between defendant and the foundation contractor, William E. Dailey, Inc., although the breaches of contract alleged and found with respect to each defendant were independent and separate. In one part of the charge, the court clearly specified that defendant "will be liable for damages resulting from [deviation from plans and specifications]." This point was repeated a number of times. However, later in a discussion of damages with respect to the foundation contractor, the court stated:

> Damages is a legal term meaning compensation. The measure of damages for breach of a contractual duty under a construction contract is the reasonable cost of repair or, if the repair involves unreasonable economic waste, the measure of damages is the diminution of the value of the property resulting from the breach. If you decide that this is the proper method of assessing any damages, you must allocate the damages proportionately between the parties whose breach of contract occasioned the damages.

The point was repeated with respect to defendant except that the end of the last sentence required the jury to allocate proportionately "between the parties whose breach occasioned the injury." The interrogatories required the jury to itemize the damages for each breach of contract and contained no direction to allocate damages. For example, after asking whether defendant deviated from the plans and specifications, the interrogatories went on to ask, "If yes, what amount of damages will compensate her for the breach, if any?"

---

a completed house after defendant left the job. Plaintiff never argued this below, and we have not considered it.

In reviewing jury instructions, we look at them as a whole, not piecemeal. See *Favreau v. Miller,* 156 Vt. 222, 230, 591 A.2d 68, 73 (1991). If the charge as a whole "'breathes the true spirit and doctrine of the law' and there is no fair ground to say the jury has been misled," there is no ground for reversal. *State v. Valley,* 153 Vt. 380, 398, 571 A.2d 579, 588 (1989) (quoting *State v. Norton,* 147 Vt. 223, 235, 514 A.2d 1053, 1061 (1986)).

It is clear from the court's ruling on the new trial motion that it intended to convey a very narrow principle. That is, the court intended to convey that if the jury used the alternative method of damage calculation based on diminution of value of the property and found that more than one contractor had committed a breach affecting that value, it had to allocate that diminution between the breaches it found. The court was correct in charging the alternative measures of damages in these circumstances. See Restatement of Contracts 2d § 348(2) (1981) (when breach of construction contract results in unfinished or defective construction and loss in value to plaintiff cannot be calculated with sufficient certainty, measure of damages is either cost of repair or "diminution in the market price of the property"). If damages are to be measured by diminution in value of the property, and more than one contractor has committed a breach that affects that value, the diminution in value may be allocated to the contractors in relation to their impact on the diminution.[6]

Defendant reads the charge as requiring the jury to add up all the items of damages attributable to each defendant and then allocate the damages proportionately to each defendant. Further, he argues that "proportionately" actually means equally so that each defendant will pay half the overall damages. Although the language could have been more precise, we do not believe there is a serious risk that the jury misread it in the tortured fashion defendant alleges. Defendant's reading creates an unnecessary internal inconsistency in the charge

---

[6] An alternative is that each wrongdoing is responsible for the entire loss when each is a "substantial factor" in bringing it about. These alternatives are discussed in the majority opinion and dissent in *Bowen v. United States Postal Service,* 459 U.S. 212 (1983); see also 5 Corbin on Contracts § 999, at 24–25 (Supp. 1992). The alternative is less favorable to defendant.

overall and a misreading of the term "proportionately." We conclude that the charge, when read in its entirety, conveys the proper legal principles to the jury and is not misleading.

B.

Defendant's second claim is that the jury verdict for $66,500 for deviation from the plans and specifications is excessive and the trial court erred in refusing to give him a new trial. He analyzes each of the improper actions claimed by plaintiff, argues that many cannot be classified as failure to follow the plans and specifications, and concludes that the jury could have found only $34,446 attributable to his deviations from the plans and specifications. Many of the items of damage are excluded by him because he claims that there was no applicable plan or specification or because the item is based on poor quality labor or materials, for which the jury found no breach.

In evaluating this claim, we must consider the evidence in the light most favorable to the damages found by the jury and uphold the verdict if there was evidence reasonably supporting it. See *Lorrain v. Ryan*, 160 Vt. 202, 209, 628 A.2d 543, 548 (1993). Both the verdict and the court's ruling denying a new trial involve discretion. See *id.*

We have examined each of the items of damage defendant would exclude as not fairly within the jury's verdict, as well as the additional items raised by plaintiff. Much of the dispute involves whether a particular item is properly characterized as a deviation from the plans and specifications. We conclude, as did the trial court, that the evidence supported items of deviation from the plans and specifications that exceeded the $66,500 the jury awarded for this purpose. In many cases, those same items could have been characterized in a different way to bring them outside the verdict. The characterization was, however, for the jury. This case is similar to *Retrovest Assocs., Inc. v. Bryant*, 153 Vt. 493, 498, 573 A.2d 281, 284 (1990), in which we concluded that "the jury could reach virtually any amount within very wide limits." The verdict is within those wide limits.

*The judgment against defendant William E. Dailey, Inc. is affirmed. The judgment against defendant Richard Cutler d/b/a Cutler Construction Co. for breach of contract is remanded for addition of prejudgment interest on the damages awarded for overcharging on labor and materials and charg-*

*ing for labor and materials not used in plaintiff's house, and is in all other respects affirmed. The directed verdict for Deborah Cutler is affirmed. The judgment for defendant Richard Cutler d/b/a Cutler Construction Co. on plaintiff's fraud claim, based on the jury verdict, is affirmed. The directed verdict for defendant Richard Cutler d/b/a Cutler Construction Co. on plaintiff's fraud-in-the-inducement and consumer fraud claims is reversed and remanded.*