*Pettersen v. Monaghan Safar Ducham PLLC*, No. 137-2-19 Cncv (Toor, J., June 11, 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Chittenden Unit | Docket No. 137-2-19 Cncv |

Pettersen vs. Monaghan Safar Ducham PLLC

## ENTRY REGARDING MOTION

Count 1, Promissory Estoppel (137-2-19 Cncv)

Title:      Motion for Summary Judgment (Motion 4)
Filer:      Monaghan Safar Ducham PLLC
Attorney:   Eric D. Jones
Filed Date: February 13, 2020

Response filed on 03/17/2020 by Attorney William J. Pettersen for Plaintiff William Pettersen
      Plaintiff's Opposition;
Reply filed on 04/16/2020 by Attorney Eric D. Jones for Defendant Monaghan Safar Ducham PLLC

Plaintiff  Pettersen is a lawyer who formerly worked as an associate at defendant law firm (the Firm). He alleges that in  2016 he conveyed to his supervisor that he "thought earning $100,000 after five years with the firm would be a reasonable partnership trajectory" and that the supervisor responded that "he thought that was reasonable." Complaint ¶¶ 25-26. When Pettersen did not receive the raise he expected in 2018, and was told the $100,000 salary was not guaranteed, he threatened to sue the firm. He no longer works there. He brings this case asserting claims of promissory estoppel, unjust enrichment, intentional misrepresentation, wrongful termination, defamation, and tortious interference with contractual relations. Defendant ("the Firm") moves for summary judgment. Pettersen consents to judgment for the Firm on the claims of tortious interference with contract and defamation, but otherwise objects.

## Undisputed Facts

Plaintiff has not filed a response to the Firm's statement of facts. The court therefore takes those facts as undisputed to the extent that they are supported by record evidence. V.R. C. P. 56(e). Plaintiff has filed his own statement of facts, but that is not what the rule contemplates. The court needs a clear record of what is or is not disputed, not competing narratives. The court therefore looks only to the record evidence Pettersen cites, not his characterizations of it. For example, where he alleges that a "promise" was made, the record he cites merely supports that a statement "that is reasonable" was made. Compare Ptf.'s SMF ¶ 1 with Pettersen Dep. at 128-29 and 147-48.

The relevant undisputed facts are as follows. Pettersen was hired as an associate at the Firm in 2016. He signed a letter confirming that his employment was at will, and stating that bonuses were a potential based upon performance and firm revenues. Pettersen received a 9 % raise after seven months, to $60,000 per year. He complained that this was insufficient. He received a $6,000 bonus three months later, and another a year later. He complained that this latter bonus was not enough. The Firm then gave him an additional $1,100. Three months later he received another raise of 4%. He responded that he needed to leave the firm and would immediately start looking for other jobs. He sent a letter to the partners to that effect three weeks later, in April of 2018.

The April 10 letter threatens to sue the Firm and says "I must now look for different employment." Ex. 7 to Ptf. SMF, p. 3. The letter also proposes a $65,000 severance package. Id. p. 4. It goes on to say that a response to that proposal is required by May 7 "in the hope that the firm and I may part on amicable terms, " and concludes: "I will continue my excellent service to the firm and its clients in the meantime." Id.

The partners then met with Pettersen, and asked whether there was anything they could do to keep him at the Firm. He said no, not in light of the way he had been treated. One of the partners said it appeared he was resigning. He said he was not. The Firm responded the same day with a letter stating: "[W]e believe you have effectively resigned as an employee." Ex. 8 to Ptf. SMF. It went on: "Given that your claim is basically 'pay me or else,' and your specific statement on Page 3 of your letter wherein you state, 'I must now look for different employment,' we accept this statement as your resignation." Id. The Firm went on to state that it believed Pettersen had used his work-issued Westlaw account, work computer, and work hours to craft his letter and that if he did not intend his letter to be a resignation, he was terminated "as of today." Id.

Pettersen believes the Firm had made a promise to him concerning compensation and partnership. The conversation to which he refers was one in which he was complaining about his compensation. He stated his belief that a five-year partnership track and a $100,000 salary by that time was a reasonable trajectory. The partner to whom he was speaking said "I think that is reasonable."

Prior to sending his April 10 letter, Pettersen had copied client files to his personal computer and downloaded two years of emails, including client emails. The files were the property of the clients, except that the Firm's work product was the property of the Firm. Pettersen did not have permission from the clients or the firm to copy any of the files.

Throughout his employment at the Firm, Pettersen was looking for work elsewhere in Vermont. He had not moved to Vermont to take the job, and turned down no other offers during his time at the Firm. He claims that he stayed with the Firm because of the conversation about salary, and "was ready to move out of state and start applying to firms

out of state and get hired at a firm making more money." Pettersen Dep. at 249. His filings reflect that he currently works in Vermont for Pettersen Law PLLC.

<u>Conclusions of Law</u>

1. <u>Promissory Estoppel</u>

To establish promissory estoppel, Pettersen would have to show "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance," and that "injustice can be avoided only by enforcement of the promise." <u>Foote v. Simmonds Precision Prods. Co.</u>, 158 Vt. 566, 573 (1992), quoting Restatement (Second) of Contracts § 90(1)(1981). It must be more than "a mere expression of intention, hope, desire, or opinion, which shows no real commitment." <u>Nelson v. Town of Johnsbury Selectboard</u>, 2015 VT 5, ¶ 56, 198 Vt. 277, quoting <u>Escribano v. Greater Hartford Acad. of Arts</u>, 449 Fed.Appx. 39, 43 (2d Cir.2011)(quotation omitted). Such a promise "may modify an at-will employment relationship and provide a remedy for wrongful discharge, as long as the promise made by the employer was of a specific and definite nature, and not merely a vague assurance." <u>Id</u>. (quotations and citations omitted).

Here, the "promise" Pettersen alleges is an oral response from a partner at the Firm in conversation. The only statement made was that Pettersen's stated goal of making partner and making $100,000 in five years was "reasonable." There is nothing to suggest that the Firm "should [have] reasonably expect[ed]" that an associate would take such a vague statement as a promise. <u>Dillon v. Champion Jogbra, Inc.</u>, 175 Vt. 1, 9 (2002). It was exactly what the Court says is not sufficient: a mere expression of intention or hope. No reasonable person—especially a lawyer—could possibly have interpreted that as a promise. No reasonable jury could find it to be one.

4

Nor can Pettersen establish reliance on the statement at issue. He did not change his position based upon the statement, such as declining another offer. He continued to look for jobs with other law firms during his employment at the Firm, and proffers no detriment to him as a result of the alleged promise. He says he would have left the firm and sought work in other states if he had known he would not be making $100,000 in five years, but he proffers no evidence that there were other jobs for him out of state. In fact, although he is no longer employed at the Firm he has still not left Vermont. He has proffered no evidence that his opportunities for work out of state decreased over time. There is just no evidence of any detriment to Plaintiff as a result of his staying at the Firm.

### Unjust Enrichment

Unjust enrichment "rests upon the principle that a man shall not be allowed to enrich himself unjustly at the expense of another." Legault v. Legault, 142 Vt. 525, 531 (1983) (internal quotation and citation omitted). In evaluating such claims, the question is "whether, in light of the totality of circumstances, it is against equity and good conscience to allow defendant to retain what is sought to be recovered." Savage v. Walker, 2009 VT 8, ¶ 8, 185 Vt. 603 (internal quotations and citations omitted). "This involves a realistic determination based on a broad view of the human setting involved, rather than a limited inquiry confined to an isolated transaction." Id.

Pettersen argues that the Firm was unjustly enriched by his work because it billed more than it paid him. Pettersen SMF 37. That is the way law firms work. He does not dispute that he was paid market rate. Opp. at 21. He worked, he got paid the salary he had agreed to, plus significant bonuses and raises over time. There is nothing unjust about that. It would not be "against equity and good conscience" to allow the Firm to retain its billings for cases he worked on.

5

<u>Intentional Misrepresentation</u>

To prove intentional misrepresentation, Pettersen would need to show by clear and convincing evidence a "misrepresentation [that] was false when made and known to be false to the maker, was not open to the defrauded party's knowledge, and was relied on by [Pettersen] to [his] damage." <u>Kneebinding, Inc. v. Howell</u>, 2018 VT 101, ¶ 141, 208 Vt. 578 (quotation and citation omitted).

As noted above, Pettersen has shown no detrimental reliance and the claim fails for that reason alone. In addition, it fails for another reason. "The intentional misrepresentation of future action creates a misrepresentation of existing fact in that the actor has lied as to their current intention." <u>Id</u>. ¶ 141 (citation omitted). The misrepresentation on which Pettersen relies is the statement that making partner and making $100,000 in five years seemed "reasonable." This is not a factual statement. Rather, it can only be characterized as an opinion. "[O]pinions generally do not give rise to misrepresentation, 'because opinions are not facts, and the tort of fraud is grounded upon a defendant's misrepresentation of facts.'" <u>Webb v. Leclair</u>, 2007 VT 65, ¶ 22, 182 Vt. 559, quoting <u>Winton v. Johnson & Dix Fuel Corp</u>., 147 Vt. 236, 240 (1986).

However, "[m]isrepresentation of opinion can be the basis of a fraud claim if it is part of a scheme to defraud." <u>Winey v. William E. Dailey, Inc.</u>, 161 Vt. 129, 133 (1993). In addition, "misrepresentations about future actions can be fraudulent if defendant, at the time of the statement, intends to act differently from the promise." <u>Id</u>. Petterson argues that there is evidence of such a scheme to defraud. However, none of the facts he cites, even if true, support the claim. Whether the firm had made other associates partners, whether they made or lost money on starting associates, whether they sought new associates, whether the partners had different views on the criteria for partnership,

whether a performance review was late, and so on, do not establish a scheme to defraud. No reasonable jury could so find. Nor is there any evidence that the partner said one thing but planned another.

Wrongful Termination

Pettersen next alleges wrongful termination in violation of public policy. An at-will employee may be terminated for any reason unless there is a "clear and compelling" violation of public policy. Payne v. Rozendaal, 147 Vt. 488, 491 (1986), quoting Jones v. Keogh, 137 Vt. 562, 564 (1979). However, "[a]n employee seeking to invoke the public-policy exception to at-will employment must demonstrate that her employer's conduct was cruel or shocking to the average [person's] conception of justice." Boynton v. ClearChoiceMD, MSO, LLC, 2019 VT 49, ¶ 8 (internal quotation and citations omitted). The Court has pointed to terminations based on age and for serving on a jury, filing a worker's compensation claim, or refusing to give perjured testimony as examples of violations of public policy. Payne, 147 Vt. at 494; Jones, 137 Vt. at 562 (citing cases). Terminating an employee for refusing to sign a noncompetition agreement, on the other hand, is "not so contrary to our society's concern for providing equity and justice that it violates clear and compelling public policy and is not a course of conduct [that] is cruel or shocking to the average man's conception of justice." Madden v. Omega Optical, Inc., 165 Vt. 306, 314 (1996)(internal quotations and citation omitted).

Pettersen's claim is that he was fired for threatening to sue the Firm. While the Firm argues that he resigned, their letter says that if he is not resigning, he is terminated. Ex. 8 to Ptf. SMF. In addition, Pettersen's letter made clear that even if he was resigning, that was not effective until several weeks later. Thus, the correspondence between the parties can support both parties' interpretations. There is also a potential for each side to

prevail factually on what was the true reason for the termination: the threat to sue, or the Firm's belief that Pettersen had engaged in misconduct. The question is whether, even if a jury determined that this was a termination, and was based upon the threat to sue, Pettersen's legal theory supports the claim.

In defining the parameters of the "public policy" exception, <u>Payne</u> adopted an Ohio court's definition, including the following:

> In substance, [public policy] may be said to be the community common sense and common conscience, extended and applied throughout the state to matters of public morals, public health, public safety, public welfare, and the like. It is that general and well-settled public opinion relating to man's plain, palpable duty to his fellow men, having due regard to all the circumstances of each particular relation and situation.
>
> Sometimes such public policy is declared by Constitution; sometimes by statute; sometimes by judicial decision. More often, however, it abides only in the customs and conventions of the people—in their clear consciousness and conviction of what is naturally and inherently just and right between man and man. It regards the primary principles of equity and justice and is sometimes expressed under the title of social and industrial justice, as it is conceived by our body politic. When a course of conduct is cruel or shocking to the average man's conception of justice, such course of conduct must be held to be obviously contrary to public policy. . .

<u>Payne</u>, 147 Vt. at 492–93, quoting <u>Pittsburgh, Cincinnati, Chicago & St. Louis Railway v. Kinney</u>, 115 N.E. 505, 507 (Ohio 1916).

Pettersen cites no cases finding that termination after a threat to sue the employer is a violation of public policy; the Firm cites none saying it is not. The only case Pettersen cites on this point has to do with whether a threat to sue a third party can meet the "wrongful act" element of the tort of interference with contractual relations. <u>Kollar v. Martin</u>, 167 Vt. 592 (1997). That had nothing to do with the employment setting and is an entirely different question from that before the court here. Likewise, his citations to

8

statutes prohibiting retaliation for asserting statutory rights, such as asserting a worker's compensation claim, are inapplicable here.

Pettersen's argument is that any termination based upon a threat to sue is a violation of public policy because it affects Vermonters' hallowed right of access to justice. To the contrary, Pettersen is here in court litigating his claim, and the Firm has in no way barred the courthouse door. Instead, it has merely decided that an employee threatening to sue because he is dissatisfied with his pay and promotion opportunities is not an employee it wishes to keep on the payroll. Other jurisdictions have rejected the idea that there is "a public policy interest in having employees sue their employers unimpeded." Whitman v. Schlumberger Ltd., 793 F. Supp. 228, 232 (N.D. Cal. 1992); *see also*, Jersey v. John Muir Med. Ctr., 118 Cal. Rptr. 2d 807, 815 (Cal. Ct. App. 2002) ("There are appropriate reasons for which an employer may wish to prevent its employees from suing the employer itself, such as avoiding dissension in the workplace. . ."). The logic is obvious:

> If the filing of suit were a protected decision, . . . there would be the danger that an employee, anticipating an adverse job action due to poor performance, would file suit against his employer as a "preemptive strike" against termination. Further, [it] would place the employer in the unenviable position of having to continue in a relationship that has been tainted by the acrimonious nature of litigation.

Taylor v. Volunteers of America, 795 N.E.2d 716, 719 (Ohio Ct. App. 2003), *but see* Terrell v. Uniscribe Prof'l Servs., Inc., 348 F. Supp. 2d 890, 896 (N.D. Ohio 2004)(reaching opposite conclusion under Ohio law). Another court rejecting a claim that such a termination violates the right of access to the courts similarly explained:

> Whenever a dispute between an employer and an at-will employee threatens to culminate in the employee's discharge, the employee, simply by retaining an attorney and threatening to sue, could procure that which is unavailable to him through

9

> contract—employment security. . . . The rule advocated in the complaint ironically would penalize a company for discharging an at-will employee when the employment relationship has completely soured.

Kavanagh v. KLM Royal Dutch Airlines, 566 F. Supp. 242, 244 (N.D. Ill. 1983). "[S]uch an adversarial attitude between an employee and employer could be inimical to the operation of the company and . . . imposing any limitation upon the firing of a discontented employee would severely impact upon the employer's right to discharge those whose conduct could be harmful to the employer's business. Under these circumstances a balancing of the competing interests favors the employer." Alexander v. Kay Finlay Jewelers, Inc., 506 A.2d 379, 381 (N.J. App. Div. 1986).

For these very reasons, it is hard to imagine many in the community saying that an employer should be required to continue to employ someone who is threatening to sue it based upon claims related solely to pay and promotion opportunities. Such a termination is not "so contrary to society's concern for providing equity and justice that there is a clear and compelling public policy against it." Dulude v. Fletcher Allen Health Care, Inc., 174 Vt. 74, 82 (2002). It is far from "cruel or shocking to the average man's conception of justice." Payne, 147 Vt. at 493.

The point of the public policy exception is to prevent "injuries to the public," not solely private injuries such as those Pettersen asserts here. LoPresti v. Rutland Reg'l Health Servs., Inc., 2004 VT 105, ¶ 20, 177 Vt. 316; *see also* Madden, 165 Vt. at 314. "While plaintiff had a legal right to sue his employer for monies considered to be due him as salary, there can be no question that the company also had a compelling interest to operate its business without the harassment of suits by employees dissatisfied with their wages or disgruntled because of a reduction in their salary." Alexander, 506 A.2d at 381. As in Alexander, Pettersen's termination "was not in contravention of his exercise of a

statutorily created right . . . Nor was it because of his refusal to perform any duties violative of public policy." Id. It merely "involved a matter having no significance beyond the private interests of plaintiff and defendant." Id. The claim cannot succeed.

Punitive Damages

Finally, the Firm moves for summary judgment on the punitive damages claim. Given the court's rulings on the merits, this issue is moot.

Order

Defendant's motion for summary judgment is granted.

Electronically signed on June 11, 2020 at 08:58 AM pursuant to V.R.E.F. 7(d).

_____
Helen M. Toor
Superior Court Judge

Notifications:
William J. Pettersen (ERN 6619), Attorney for Plaintiff William Pettersen
Eric D. Jones (ERN 1609), Attorney for Defendant Monaghan Safar Ducham PLLC