STATE OF VERMONT

**SUPERIOR COURT**
Caledonia Unit

**CIVIL DIVISION**
Docket No. 67-3-20 Cacv

JOHANNA POLSENBERG,
ZACHARY BARTLETT, and
WARREN NOTT
      **Plaintiffs,**

v.

CONTINUUM, LLC,
      **Defendant**

FILED

DEC – 9 2020

VERMONT SUPERIOR COURT
CALEDONIA UNIT

## DECISION
### Defendant's Motion for Partial Summary Judgment (MPR #3), filed June 23, 2020

This matter is before the court on Defendant's Motion for Partial Summary Judgment on Count VI of Plaintiffs' Complaint, which alleges a violation of the Vermont Consumer Fraud Act. Defendant is not challenging Plaintiffs' other claims in this motion, which include breach of contract, unjust enrichment, detrimental reliance, negligent misrepresentation, fraudulent non-disclosure, and breach of good faith. Plaintiffs are represented in their opposition to Defendant's motion by Attorney Matthew M. Glitman. Defendant is represented by Attorney Brice C. Simon. Both parties submitted statements of fact and memoranda of law in support of their positions.

In May 2019, Plaintiffs Johanna Polsenberg, Zachary Bartlett, and Warren Nott contracted with Defendant Continuum, LLC for the processing and sale of hemp grown on the farm owned by Polsenberg and Nott for a minimum of three years. Plaintiffs represented in affidavits that they had not engaged in the commercial production of CBD hemp prior to contracting with Defendant, and that while Bartlett has some experience raising cattle, Polsenberg and Nott do not have prior experience with farming. Plaintiffs allege in the Complaint that they contracted with Defendant after receiving their Letter of Intent on March 29, 2019. The Letter of Intent (attached to Plaintiffs' response to Defendant's motion and Exhibit 1 of the Complaint) describes Defendant as being in the business of partnering with farmers interested in entering the hemp market to provide operational support, processing, and sales.

The terms of the written agreement (Exhibit 2 of the Complaint) stipulate that Plaintiffs will sell to Defendant and Defendant will purchase all of the Hemp Biomass that Plaintiffs grow on specified acres, but allow Defendant to refuse delivery of Hemp Biomass that does not meet specified requirements. The agreement involves a "spot price" payment where Plaintiffs receive an amount based on the CBD percentage point per pound of crop delivered to Defendant and a profit-sharing arrangement based on proceeds from Defendant's post-processing final sale of the product. The contract also involves limited consulting services (offered at a rate of $100 per hour after the first four hours) and requires Plaintiffs to purchase seeds recommended by Defendant. The parties note that ultimately, Plaintiffs purchased hemp seeds directly from Defendant.

Plaintiffs allege in the Complaint that Defendant lost the ability to perform the processing duties under the contract after losing Continuum's Hemp Biomass processing equipment (the "Lab"). The Complaint states that Defendant lost possession of the Lab in a settlement agreement between Continuum's current owner Chris Giotakis and former owner Jeffry Knight. The agreement settled Knight's lawsuit against Giotakis seeking payment for Knight's membership shares in Continuum. Knight agreed to settle a third-party contractor's (Peak CM) lien on Continuum's assets in exchange for ownership of the Lab. After Defendant lost the Lab and consequently the ability to process Hemp Biomass into CBD isolate, Plaintiffs allege that Defendant told Plaintiffs they could earn more from Smokeable Flower than from CBD isolate, prompting Plaintiffs to convert a portion of their Hemp Biomass crop into Smokable Flower. Plaintiffs claim they have not been paid for the pounds of Smokable Flower they delivered to Defendant or for the pounds of Hemp Biomass that meets contractual specifications but for which Defendant has failed to designate a delivery date.

## Analysis

The Consumer Fraud Act prohibits "unfair methods of competition in commerce." 9 V.S.A. § 2453(a). It is intended to protect the public from deceptive acts or practices in a remedial manner by providing relief for those who contracted in reliance of such conduct. *Carter v. Gugliuzzi*, 168 Vt. 48, 52 (1998). In order to be awarded relief under the CFA, Plaintiffs must be complaining of the type of conduct it was intended to address and must pass the threshold requirements. "The Act authorizes recovery of damages and attorney's fees for '[a]ny consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices' made in commerce in violation of the CFA." *Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*, 2012 VT 18, ¶ 26, 191 Vt. 284, 297 (2012) (citing 9 V.S.A. § 2461(b)).

Relief under the CFA is available to "consumers" whose transactions were "in commerce," 9 V.S.A. §§ 2453(a), and who relied on the other party's deceptive acts or practices in the formation of their contract. *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 136 (1993) ("[The CFA] is concerned with the contents of advertisements and offers—that is, elements of contract formation—and not conduct that is in breach of an existing contract"). Defendant argues for dismissal of Plaintiffs' consumer fraud claim on the grounds that Plaintiffs are not "consumers," that the transaction at issue was not "in commerce," and that Plaintiffs did not allege that they were fraudulently induced to enter the contract.

A court will grant a motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. Rule 56(a). "In determining whether there is a genuine issue as to any material fact, we will accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Robertson v. Mylan Labs, Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356, 362 – 63. The party opposing summary judgment may not "rest on bare allegations to demonstrate that disputed material facts remain." *Johnson v. Harwood*, 2008 VT 4, ¶ 5, 183 Vt. 157, 160. The court grants Defendant's motion for partial summary judgment on the grounds that Plaintiffs have not supported their allegations of misrepresentations or omissions related to the formation of the contract, and because the transaction between the parties was not "in commerce" as a matter of law.

Defendant asserts in both its memorandum in support of its motion and as an undisputed fact that Plaintiffs' did not allege "any action, conduct, misrepresentation, omission, unfair or

2

deceptive act or practice by Defendant relative to the inducement or formation of the Contract" nor could they establish such an allegation with admissible evidence. Def.'s Statement of Facts ¶ 7. Plaintiffs' Complaint does not identify which "representations and omissions of fact . . . likely to mislead the reasonable consumer in a position such as that occupied by Plaintiffs" provided the basis for their claim. Complaint ¶ 66. This is particularly notable because Plaintiffs describe the factual allegations behind the other claims in the Complaint in detail. Though they allege a number of misrepresentations and other unfair practices in the complaint, none relate to the inducement or formation of the contract. From failing to disclose the loss of the Lab, to representations about returns from Smokeable Flower, to nonpayment and failures to accept delivery of conforming Hemp Biomass, all of the alleged conduct occurred after the contract was formed and relate to issues with performance. "Case law has routinely held, however, that the Consumer Fraud Act does not apply to the performance of an ongoing contract, even if false or fraudulent representations are involved." *Fraser v. Concord Gen. Mut. Ins. Co.*, No. 2:06-CV-210, 2010 WL 11537929, at *3 (D. Vt. Mar. 24, 2010).

Plaintiffs provide the allegations behind their claim that they were induced to enter the contract by Defendant's unfair and deceptive communications for the first time in their opposition to summary judgment. In response to Defendant's statement of undisputed material facts, Plaintiffs assert that because "Defendant knew of its pending insolvency due to an ongoing lawsuit filed against it by PeakCM, LLC for an unresolved construction debt," it was on notice that it could lose the Lab and consequently its ability to perform processing services. Pls.' Response to Def.'s Statement of Facts ¶ 5. Plaintiffs argue that Defendant disregarded this risk by selling them $12,000 of hemp seeds and promising that it would process their hemp crop into CBD isolate.

This argument is insufficient to save the claim from summary judgment because the allegations are not supported by the facts presented. Though Plaintiffs allege that Defendant knew of its pending insolvency because of PeakCM's lawsuit and was consequently on notice that it could lose its ability to perform under the contract, the lawsuit was not filed until after Defendant contracted with Plaintiffs. The signature dates on the contract show that it was signed between May 10, 2019 and May 13, 2019, and the copies of the checks Plaintiffs paid to Defendant for seed show that they were signed on May 3, 2019 and May 6, 2019. PeakCM did not file its lawsuit against Defendant and Jeffry Knight, Inc. until June 13, 2019, and the Chittenden Superior Court granted the writ of attachment on July 17, 2019. Complaint ¶ 12; Pls.' Ex. 5. Additionally, Defendant did not lose access to the Lab until July 28, 2019, when Jeffry Knight agreed to cover PeakCM's lien at his own expense in exchange for ownership of the Lab. The July 28, 2019 settlement between Knight and Chris Giotakis resolved Knight's June 10, 2019 lawsuit seeking the amount Giotakis had not paid for the membership shares of Continuum. Complaint ¶ 13; Pls.' Ex. 6. This evidence shows, at most, that Defendant was in a difficult financial situation prior to contracting with Plaintiffs. The evidence does not raise a genuine issue as to whether Defendant induced Plaintiffs to enter the contract by misrepresenting its ability to perform because it does not show Defendant had lost or was on notice of losing the Lab prior to forming the contract.

Even assuming Plaintiffs could have responded to Defendant's misrepresentation argument with "specific facts that would justify submitting [their claim] to a factfinder," *Robertson*, 2004 VT 15, ¶ 14, Defendant's request for partial summary judgment would still be granted on the grounds that the transaction was not "in commerce" as a matter of law. While

3

Vermont's CFA statute does not define the term "in commerce," the Vermont Supreme Court discussed the meaning of the term at length in *Foti Fuels, Inc. v. Kurrle Corp.*, and found that it "narrows the CFA's application to prohibit only unfair and deceptive acts or practices that occur in the consumer marketplace." *Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 21, 195 Vt. 524, 536. The Court determined the status of the transaction in *Foti Fuels* by considering a few factors, including whether the transaction took place in the course of an ongoing business in which the defendant held himself out to "the public at large," whether the transaction involved "products, goods or services purchased or sold for general consumption," and whether it had a level of customization that "does not typically occur in the consumer marketplace." *Foti Fuels*, 2013 VT 11, ¶¶ 21, 25.

Defendant argues that the contract between the parties falls outside of the scope of the CFA by not being "in commerce" as a matter of law because the undisputed facts show a highly customized contract for the production of commercial hemp sold to Defendant for processing and resale. It asserts that the contract was a private business transaction not offered to the general public. In response, Plaintiffs argue that the transaction was "in commerce" because Plaintiffs purchased hemp seeds from Defendant in the context of Defendant's ongoing business, which is a business that solicits and offers its services to the public at large. Plaintiffs cite to Defendant's Letter of Intent as support for their claim that the contract was offered to the general public.

The court concludes that Plaintiffs' arguments do not create a genuine issue as to whether the transaction was "in commerce." In the Letter of Intent, Defendant describes itself as a business that partners with farmers new to the hemp industry and creates a reasonable implication that Defendant did not offer its invitation to contract solely to Plaintiffs. The Letter of Intent does not, however, create a dispute over whether Defendant held itself out to the public at large. First, Defendant can make an offer to more than one party without making it to the general public in the meaning of the CFA. See *Dole v. Adams*, No. 1:12-CV-24-JGM, 2015 WL 2184130, at *3 (D. Vt. May 11, 2015) ("Though the offer to provide real estate and to lease it back was not offered solely to Dole, neither was it held out to the public at large"). Second, the Letter of Intent cannot show that Defendant held itself out to the general public because it does not communicate an offer that could even be made to the general public. The Letter seeks farmers interested in growing, harvesting, and delivering hemp under either a spot price or profit sharing agreement; it did not offer goods or services to be purchased or sold for general consumption. Any goods and services that Plaintiffs purchased as part of the transaction between the parties were not offered to the general public, but specifically to Plaintiffs in furtherance of each party's obligations under the contract and the larger aims of producing, processing, and eventually reselling commercial hemp. Third, the level of customization in the contract, from the 25% spot price and 75% profit share arrangement, to the metrics for performance, shows that it is not the type of contract that usually occurs in the consumer marketplace.

Finally, and importantly, part of the "in commerce" requirement is showing that the deceptive act or practice has the potential to impact the public. *Foti Fuels*, 2013 VT 111, ¶ 21 ("[T]he practice must have a potential harmful effect on the consuming public, and thus constitute a breach of a duty owed to consumers in general"). Plaintiffs allege that "Defendant's practice of targeting small, inexperienced farmers therefore presents a cognizable threat to the public interest." Pls.' Response to Def.'s Mot. for Summ. J. at 3. However, the harm Plaintiffs

4

allege stems from the loss of Defendant's Lab during the term of the contract and its alleged inability to perform. It is unclear to the court how any failures to perform on the part of Defendant would harm anyone outside of the contracting parties. The transaction at issue did not occur "in commerce" as a matter of law and Plaintiffs' CFA claim cannot survive summary judgment.

### Order

The court grants Defendant's motion for partial summary judgment and dismisses Count VI of Plaintiff's Complaint.

The attorneys shall submit a stipulation for a pretrial scheduling order by December 18, 2020.

Dated this 28th day of November, 2020.

_____
Mary Miles Teachout
Superior Court Judge

5