Filed 11/16/21

VERMONT SUPERIOR COURT
Lamoille Unit
154 Main Street
Hyde Park VT 05655
802-888-3887
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 196-11-17 Lecv

## Mahoney vs. Beacon Hill Builders &

## ENTRY REGARDING MOTION

Title:       Motion for Summary Judgment (Motion: 25)
Filer:       Jennifer Lajoie
Filed Date:  May 21, 2021

The motion is GRANTED IN PART and DENIED IN PART.

Leslie Mahoney ("Plaintiff") filed a second amended complaint on June 1, 2018, against Beacon Hill Builders & Associates, Inc., ("BHB"), Tucker Fossiano ("Tucker"), and David Fossiano ("David") (together, "Defendants"). She alleges that in March 2016, she purchased a lot in the Rich-Reed Subdivision located in Wolcott, Vermont and that she retained Defendants to build her a house on that lot. According to the second amended complaint, Plaintiff met with Tucker at the job site in August 2016 to discuss the details of the project, including her available budget. Plaintiff told Tucker she had $250,000 to spend on the project and, according to Plaintiff, Tucker agreed that BHB "could do the project for $250,000." Plaintiff contends that the parties' agreement is memorialized in the zoning application that Tucker prepared and filed on August 30, 2016.

Construction began in mid-September 2016, and Plaintiff believed BHB would be able to complete "the entire upstairs of the house, the downstairs bathroom, and the downstairs frame and site work for $250,000 which would leave a portion of the basement unfinished, but otherwise, the house would be complete and move-in ready." Plaintiff asserts that she visited the job site in October 2016 and "discovered for the first time that Defendants had constructed the house in the wrong location by almost 150 feet." Plaintiff did not ask Defendants to move the house because she "wanted to get the project done."

Plaintiff alleges she spoke with David in January 2017 about the progress of the project and realized that "Defendants were approaching $250,000 in costs and had not even come close to completing the agreed upon parts of the home." David told Plaintiff "it would be, at a minimum, over $100,000 more to complete the home." Plaintiff told Defendants to stop working on the house because she "could not spend more than $250,000."

Plaintiff asserts that she hired other contractors in March 2017 to continue working on her house. She claims these other contractors discovered "numerous structural defects and deficiencies resulting from Defendants' poor workmanship." In addition, Plaintiff alleges that Defendants' work does not comply with Vermont's Residential Building Energy Standards ("RBES"), which compliance is required by statute.

Plaintiff asserts ten causes of action against Defendants:

Breach of contract (Count I);
Breach of implied warranty against structural defects (Count II);
Breach of implied warranty of good workmanship (Count III);
Negligence in construction (Count IV);
Consumer fraud (Count V);
Fraudulent misrepresentation (Count VI);
Negligent misrepresentation (Count VII);
Fraud-in-inducement (Count VIII);
Unjust enrichment (Count IX); and
Noncompliance with Vermont's RBES (Count X).

Defendants have denied any wrongdoing and filed a motion for partial summary judgment in which they ask the court to dismiss Counts IV-VIII against BHB and to dismiss all ten Counts asserted against the individual defendants, Tucker Fossiano and David Fossiano.

## Summary Judgment Standards

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). A fact is material "'if it might affect the outcome.'" *In re Estate of Fitzsimmons*, 2013 VT 95, ¶ 13, 195 Vt. 94 (quoting *N. Sec. Ins. Co. v. Rossitto*, 171 Vt. 580, 581, 762 A.2d 861, 863 (2000) (mem.)). "'Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. . . . The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact.'" *Boulton v. CLD Consulting Eng'rs*, 175 Vt. 413, 417 (2003) (quoting *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 18 (1995)). "'The nonmoving party may survive the motion if it responds with specific facts raising a triable issue, and it is able to demonstrate sufficient evidence to support a prima facie case.'" *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 324 (1986)). "If the nonmoving party fails to establish an essential element of its case on which it has the burden of proof at trial, the moving party is entitled to summary judgment as a matter of law." *Washington v. Pierce*, 2005 VT 125, ¶ 17, 179 Vt. 318 (quoting *G.S. Blodgett*, 163 Vt. at 180). When considering motions for summary judgment, the nonmoving party is entitled to "all reasonable doubts and inferences." *West v. N. Branch Fire District #1*, 2021 VT 44, ¶ 13 (citing *In re Miller Subdivision Final Plan*, 2008 VT 74, ¶ 8, 184 Vt. 188); *G.S. Blodgett*, 163 Vt. at 180.

## Legal Analysis

### A. Negligence in Construction (Count IV)

Defendants contend that the economic loss rule precludes Plaintiff from pursuing an action in negligence for the recovery of money damages. "The economic-loss rule 'maintain[s] a distinction between contract and tort law' by prohibit[ing] recovery in tort for purely economic losses.'" *Walsh v. Cluba*, 2015 VT 2, ¶ 27, 198 Vt. 453 (quoting *Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*, 2012 VT 80, ¶ 10, 192 Vt. 322); see also *Wentworth v. Crawford & Co.*, 174 Vt. 118, 127 (2002) ("[O]ur caselaw prohibits a claimant from seeking damages for contractual losses through tort law."). As the *Walsh* Court wrote, "Tort law imposes duties to protect the public from harm, and thus negligence

actions are generally limited to unanticipated physical injury, while contract law allows parties to protect themselves through bargaining." *Walsh*, 2018 VT at ¶ 27 (citing *Long Trail*, 2012 VT at ¶ 10).

For purposes of the economic loss doctrine, "economic loss" has been described to include:

> damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits, as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was sold or manufactured. *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 327 (Ill. 1982); *Heath v. Palmer*, 2006 VT 125, ¶ 15[, 181 Vt. 545].

*Treetop at Stratton Condo. Ass'n, Inc. v. Treetop Dev. Co.*, 2011 WL 8472969 (Vt. Super. Feb. 4, 2011). The *Treetop at Stratton Condominium* court explained that, "to recover in negligence, there must be a showing of harm above and beyond disappointed expectations, since a buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." *Id.* (citing *Redarowicz*, 441 N.E.2d at 327).

Plaintiff contends that she suffered physical harm to her property as a result of Defendants' conduct. However, as the *Walsh* Court explained, even though physical harm may have occurred to property rather than to humans, "injury to the product or property that is the subject matter of a contract is generally considered a disappointed economic expectation for which relief lies in contract rather than tort law," and the economic loss rule "bar[s] tort claims when the alleged damage is to property that is the subject of a contract between the parties." *Id.* at ¶ 28; see also *Heath v. Palmer*, 2006 VT 125, ¶ 15, 181 Vt. 545 (stating trial court properly rejected negligence claim against contractor because plaintiff's remedy for economic damages was based in contract rather than tort).

Purely economic losses may be recoverable under a tort theory of liability in professional services cases because of the parties' special relationship, "which creates a duty of care independent of contract obligations." *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 31, 181 Vt. 513, (2007) (citing *Springfield Hydroelec. Co. v. Copp*, 172 Vt. 311, 316 (2001)). Plaintiff argues that she had a "special relationship" with Defendants because she was out-of-state for much of the time when Defendants were building her house and she was relying on Defendants for decision-making. According to Plaintiff, this special relationship precludes application of the economic loss rule to bar her negligence claim. The court declines to find a special relationship as advocated by Plaintiff. The defendant in *EBWS* was a construction contractor, "not a provider of a specialized professional service," and the Court concluded that the economic loss rule barred the plaintiff's negligent design cause of action. *Id.* at ¶ 32; see also *Hamill v. Pawtucket Mut. Ins. Co.*, 179 Vt. 250, 253-54 (2005) (no special relationship existed between homeowner and independent adjusters his insurance company hired to investigate claim); cf. *Sutton v. Vermont Regional Center*, 2019 VT 71A, ¶ 33 (special relationship existed where defendants recruited plaintiffs to invest life savings "by promising exceptional oversight and management of the investment"); *Sachs v. Downs Rachlin Martin PLLC*, 2017 VT 100, ¶ 29 n.4, 206 Vt. 157 (special relationship between lawyer and client creates duty of care separate from contractual obligations).

Because Plaintiff did not have a special relationship with Defendants, the property at issue is the subject matter of the parties' contract, and she is seeking to recover economic damages,[1] her

---

[1] Plaintiff claims she suffered non-economic damages that she describes as being "unable to use her land during the pendency of this lawsuit and the loss of use of her land and time with family [that] goes beyond purely economic losses." The only viable relief Defendants could possibly provide for this alleged loss is money damages. Plaintiff

negligence claim is barred by the economic loss doctrine. The court, therefore, grants the Defendants summary judgment with respect to Plaintiff's negligence in construction cause of action (Count IV).

B. Fraudulent Misrepresentation (Count VI) and Fraud-In-Inducement (Count VIII)

To prevail on a claim for fraudulent misrepresentation, Plaintiff must prove the following:

"(1) [an] intentional misrepresentation of a material fact; (2) that was known to be false when made; (3) that was not open to the defrauded party's knowledge; (4) that the defrauded party act[ed] in reliance on that fact; and (5) [was] thereby harmed."

*Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 13, 200 Vt. 465 (quoting *Estate of Alden v. Dee*, 2011 VT 64, ¶ 32, 190 Vt. 401). Allegations of fraud must be proved by clear and convincing evidence. *Bennington Hous. Auth. v. Bush*, 2007 VT 60, ¶ 8, 182 Vt. 133 (citing *Gavala v. Claassen*, 2003 VT 16, ¶ 5, 175 Vt. 487). A fraudulent misrepresentation can be the basis for a fraud-in-inducement claim if an intentional misrepresentation of an existing fact was made that affected "'the essence of the transaction'" if "'the misrepresentation was false when made and known to be false to the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to [their] damage.'" *Kneebinding, Inc. v. Howell*, 2018 VT 101, ¶ 141, 208 Vt. 578 (quoting *Union Bank v. Jones*, 138 Vt. 115, 121 (1980)).

The basis for Plaintiff's fraud claims is Defendants' alleged statement that they could build her a house for $250,000, that they would complete the exterior and the upstairs of the house, and, at a minimum, that they would complete the bathroom and framing in the basement. Plaintiff asserts that these representations induced her to engage Defendants to build her house.

Based on Defendants' statement of undisputed material facts and Plaintiff's responses thereto, it is apparent that the parties agree about the following:

1. Tucker told Plaintiff during their initial meeting at the property, in August 2016, that Defendants could build her a house for $250,000, "but that it would be tight."

2. At that first meeting, Tucker and Plaintiff agreed "that if the project started to go over budget, Beacon Hill would not finish the entire basement."

3. As of the time of this meeting, Plaintiff did not know whether she would be getting vinyl or wood siding or whether she would have radiant or baseboard heat installed. She also did not have any specific landscaping or lighting designs in mind for the house. "These were all items that [Plaintiff] expected to negotiate moving forward."

4. Tucker never told Plaintiff that she would get a specific house for $250,000.

---

also includes a request for "injunctive relief" in addition to a request for compensatory, consequential, and punitive damages in the "Wherefore" clause of her second amended complaint. However, Plaintiff told Defendants to cease working on her house prior to filing this lawsuit (paragraph 30 of Plaintiff's second amended complaint), and she makes no demand for any specific type of injunctive relief. Thus, it appears that the type of relief Plaintiff will recover, if she recovers anything, will be limited to economic damages. .

5. Plaintiff told Tucker at this first meeting that she would pay for some of the project with money "outside" of her $250,000 budget, such as plumbing fixtures and lighting, and she had already purchased wood flooring from a Vermont flooring company.

6. In September 2016, after receiving CAD drawings from a third party, Plaintiff did not have a defined list of the items she was buying on her own versus what she expected to be included in her $250,000 budget.

7. BHB normally enters in a contract or agreement with a client prior to starting construction, but Plaintiff only had a rough sketch of a house and did not have any construction specifications and therefore there was never enough information to build a full proposal.

8. In October 2016, Plaintiff visited the job site and knew that the house was being built in the "wrong location." However, she did not mention her belief or concern to Defendants, much less insist that the hole be moved, as she was concerned about the cost of moving the hole and wanted to get the project done.

9. At a meeting Plaintiff had with Defendants at BHB's offices on October 3, 2016, the parties did not have an exact list of what was going to be included in Plaintiff's $250,000 budget and what she was going to be spending "outside" of this budget. Plaintiff continued to purchase items so that she would not go over budget, and she told BHB that she would be buying all the plumbing, bathtub, sink, all the appliances, refrigerator, washer, dryer, stove, kitchen cabinets, wood floor, lights and bathroom tile.

10. When Plaintiff left the meeting with Defendants on October 3, 2016, it was her understanding that BHB would finish the basement "to the extent the budget allowed, and that this aspect of the agreement in particular was a moving target."

Plaintiff gave her deposition on February 14, 2020. She relies, in part, on the following portions of her deposition to support her claims against Defendants:

Q: So at that (first) meeting you didn't come to an agreement as to what the $250,000 was going to buy you?
A: A house that I could live in, within budget, that was - - met standards.

. . . .

Q: I want to know what you were going to get for $250,000, other than the house that you were going to live in.
A: The house that I could live in, that met federal and state regulations.

. . . .

A: They hired everybody. That is their business. They are the general contractor, and I trusted them.

. . . .

Q: So you may not like the cost of it, but what you got for a product to-date —
A: Well, after the fact I realized the work wasn't completed the way it should have been. But at the time I didn't question them; they were building the house. They knew what was needed; and I trusted that they were staying within the $250,000, until I got the final call.

. . . .

A: I didn't question these invoices. They sent them to me; I thought it was going to be within my budget; I paid them. I didn't question them; I trusted them.

. . . .

A: They told me they would finish my house for $250,000, minus some of the work in the cellar, if it's going over. I believed this; I agreed to it, and I trusted it.

. . . .

A: They said they would build me a house for $250,000, within my budget. And I trusted them to build me a house that was well-built, within standards, and met regulations.

. . . .

Q: Can you go through those changes, so that I can understand them?
A: In the first meeting that I had with David Fossiano and Tim Urie, they had asked for changes so we could stay within the agreed-upon $250,000 budget.

In response to Defendants' interrogatories asking Plaintiff to identify "each and every written or verbal representation, communication and/or conversation" Plaintiff received that she contends misled her, Plaintiff stated:

Defendants, through Tucker Fossiano, David Fossiano, and Tim Urie, misled me with regard to the cost of the project. They agreed to complete certain work for $250,000 and they did not do that. Not only did they not complete the work, the work they did do was done poorly. These misleading statements and misrepresentations happened on multiple dates including my initial meeting with Tucker at the house site as well as my October 3, 2016 meeting with David and Tim. Tucker misled me into believing that Defendants could complete the project for 250,000. David and Tim misled me into believing that they could complete the project, as modified at our meeting, for $250,000. They acted confidently about how much it would cost to construct a single-family dwelling and specifically made suggestions for cutbacks to the project to stay within that budget. I relied on their experience and knowledge when I decided to continue working with them even after modifying the terms of my agreement with Defendants to include less work on my

home. I discussed the budget on the phone with David Fossiano and in emails; I frequently brought up the budget and sought confirmation from Defendants that we would be staying under budget. I relied on Defendants' statements that they would stay within the budget.

Defendants misled me with regards to the location of the home. Tucker Fossiano and I visited the house site and discussed the house going in a certain location. The zoning application stated that the home would be built 150+ feet away from the nearest property line. This did not happen and therefore I was misled regarding the house location.

I was misled about the quality of certain products and materials that Defendants suggested I use, such as Pella Windows and Doors which so far have led to various insulation and other issues. Additionally, Defendants suggested I use hemlock wood as it would not need to be painted, just stained; they then proceeded to hire several painters to paint the hemlock.

"'To find that a misstatement was made with knowledge of its falsity, the person accused, and not a hypothetical reasonable person must be found to have known that the statement was false, or to have made that statement with reckless indifference as to its truth.'" *Bennington Hous. Auth.*, 182 Vt. at 137 (quoting *Powell v. D.C. Hous. Auth.*, 818 A.2d 188, 197–98 (D.C. 2003)). Plaintiff acknowledges that she "does not know whether Tucker Fossiano knowingly misrepresented that BHB could build the house for $250,000, just that he agreed to do it." Defendants point out that Plaintiff has presented no evidence (1) of any intent by Defendants to falsely misrepresent the cost of the project to trick or otherwise induce Plaintiff into hiring them or (2) that any statement Defendants made to Plaintiff was false.

According to the Restatement (Second) of Torts, "'an actual fraudulent representation occurs when a person misrepresents a fact in a way that 'assert[s] that the maker knows it' to be so, but in fact 'has merely a belief in its existence and recognizes that there is a chance . . . that the fact may not be as it is represented.'" *Follo v. Florindo*, 2009 VT 11, ¶ 30, 185 Vt. 390 (quoting Restatement (Second) of Torts § 526 cmt. e (1977)). According to the *Follo* Court, "[f]raud perpetrated in this manner is characterized as a 'false representation . . . made . . . *recklessly*' because the person making the misrepresentation asserts something as fact regardless of 'whether it is true or false.' *Id. (quoting* Restatement (Second) of Torts § 526 cmt. e (emphasis added)). Plaintiff relies on this section of the Restatement (Second) of Torts to argue that she need not prove Tucker knew his statements were false when they were made; she argues she need only show that Tucker was reckless when he told her that Defendants could build her a house for $250,000.

The parties' summary judgment filings make clear that neither Plaintiff nor Defendants knew exactly which costs and expenses would be covered by Plaintiff's $250,000 budget and what Plaintiff would pay for "outside" of this budget amount. The court finds that Plaintiff has failed to make out a prima facie case for fraudulent misrepresentation because she fails to present any evidence suggesting that Tucker knowingly, or even recklessly, made a false statement when he told her Defendants could build her a house for this amount. As a result, the court grants Defendants' motion for summary judgment on Counts VI and VIII of Plaintiff's second amended complaint.

## C. Consumer Fraud (Count V)

In support of her claim for consumer fraud, Plaintiff asserts in her second amended complaint that, "[t]hrough conversations, written representations, and advertising, Defendants misled [her] with deceptive acts and practices regarding the cost of the project and Defendants' workmanship, knowledge, and experience." She also asserts that:

> Beacon Hill's website advertises that: "Beacon Hill Builders has the ability and immense talent to execute any project. Whether a custom home or larger commercial project, we have the resources to provide exceptional craftmanship and deliver your project on time and on budget." Ms. Mahoney relied on this mission statement.

In her opposition to Defendants' motion, Plaintiff identifies as the basis for her consumer fraud claim Defendants' representation that they could build her a house that she could move into for $250,000. She also focuses on Defendants' workmanship, knowledge, and experience, alleged violations of the residential energy building code, issues surrounding the location of the house,[2] cost management, and other alleged building defects.

The Vermont Consumer Protection Act ("VCPA") declares unlawful "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). Our Supreme Court has interpreted the "in commerce" language of the VCPA to require the alleged unfair or deceptive acts or practices to occur "'in the context of [an] ongoing business in which the defendant holds himself out to the public.'" *Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 21, 195 Vt. 524 (quoting *Zeeman v. Black*, 273 S.E.2d 910, 915 (Ga. Ct. App. 1980)). In addition, the deceptive acts or practices "must have a potential harmful effect on the consuming public, and thus constitute a breach of a duty owed to consumers in general." *Id.* (citing *Zeeman*, 273 S.E.2d at 915).

The VCPA is "concerned with the contents of advertisements and offers—that is, elements of contract formation—and not conduct that is in breach of an existing contract." *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 136 (1993). Statements of fact are distinguished from statements of opinion in VCPA actions; statements of fact are actionable, whereas statements of opinion are not. *Heath*, 2006 VT at ¶ 14; *Winey*, 161 Vt. at 133. Misrepresentations of opinion are actionable, however, if they are "part of a scheme to defraud." *Winey*, 161 Vt. at 133. The *Winey* Court stated that it was "reluctant to conclude that the Legislature intended a mere breach of contract to raise a presumption of fraud." *Id.* at 136.

To survive summary judgment, Plaintiff must prove that (1) Defendants made one or more misrepresentations or omissions that were likely to mislead her, (2) that Plaintiff interpreted Defendants' misrepresentation(s) or omission(s) reasonably, and (3) the misleading misrepresentation(s) or omission(s) were material. *EBWS*, 2007 VT ¶ 26; *Jordan v. Nissan N. Am., Inc.*, 2004 VT 27, ¶ 5, 176 Vt. 465. The court views the elements under an objective standard because the purpose of the VCPA is to protect the public, not punish wrongdoing. *Inkel v. Pride Chevrolet-Pontiac, Inc.*, 2008 VT 6, ¶ 10, 183 Vt. 144.

---

[2] This court is without jurisdiction to resolve any issues Plaintiff may have regarding alleged zoning violations, as it has informed the parties. See generally 4 V.S.A. § 34; *In re Confluence Behavioral Health, LLC*, 2017 VT 112, 206 Vt. 302; *Gould v. Town of Monkton*, 2016 VT 84, 202 Vt. 535. Thus, this court will not address any issues Plaintiff raises relating to zoning.

Review of Plaintiffs' evidence submitted in support of her VCPA claim shows that Plaintiff has failed to make out a prima facie case of consumer fraud under the VCPA. She has failed to identify any alleged misrepresentation of fact that she claims reasonably misled her to believe Defendants could build her a house for $250,000, as she must to maintain this cause of action. Simply making assertions about Defendants' workmanship, knowledge, and experience, alleged violations of the residential energy building code, issues surrounding the location of the house, and cost management, without coming forward with specific misrepresentations thereof, is insufficient to withstand a motion for summary judgment. As a result, the court grants Defendants' motion for summary judgment as to Count V.

D. Negligent Misrepresentation (Count VII)

In support of her negligent misrepresentation claim, Plaintiff asserts in her second amended complaint that:

> Defendants knowingly and/or recklessly supplied [Plaintiff] with facts about the cost of the project, the location of the house, and Defendants' level of experience and workmanship and [Plaintiff] relied on those facts in hiring Defendants and paying their invoices throughout the project.

In Vermont, negligent misrepresentation requires a plaintiff to establish the following:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Howard v. Usiak*, 172 Vt. 227, 230–31 (2001) (quoting *Limoge v. People's Trust Co.*, 168 Vt. 265, 268–69 (1998) (itself quoting Restatement (Second) of Torts § 552). Contrary to Plaintiff's assertion in her second amended complaint, negligent misrepresentation does not include a "knowing" or "reckless" component.

In her opposition to Defendants' motion for summary judgment, Plaintiff fails to point to specific evidence adduced through discovery to make out a prima facie case for negligent misrepresentation. She writes:

> First, Plaintiff alleges that Beacon Hill supplied her with false information. Some examples of this false information are: (1) the cost of the project; (2) Beacon Hill's experience level and quality of workmanship; (3) Beacon Hill's intention to build the house in a certain location; and (4) Beacon Hill's ability to comply with local and State laws and regulations, including the RBES.

However, as discussed above, Plaintiff has failed to produce evidence of any information Defendants provided to Plaintiff that was false, and thus, Plaintiff fails to persuade the court that

there is a triable issue of fact with respect to her claim for negligent misrepresentation. The court, therefore, grants Defendants' motion for summary judgment with respect to Count VII.

## E.  Defendants Tucker Fossiano and David Fossiano

Defendants seek to have Tucker and David dismissed (as to all counts) from Plaintiff's lawsuit, in their individual capacities, because Plaintiff does not assert any independent substantive claim against either of them.  Plaintiff acknowledges that she has added David and Tucker as individual defendants in an effort to pierce the corporate veil.  Tucker is the president and David is the vice president of BHB.

Piercing the corporate veil is a common-law equitable remedy under which a court may impose personal liability on a corporation's officers, directors, or shareholders for a corporation's wrongful acts.  *Frazier v. Preferred Operators, Inc.*, 2004 VT 95, ¶ 6, 177 Vt. 571 (mem.).  Reasons courts give for piercing the corporate veil include: "using the corporation to perpetrate a fraud; the personal use of corporate funds; the failure to observe corporate formalities; and undercapitalization."  *In re Vermont Toy Works, Inc.*, 135 B.R. 762, 770 (D. Vt. 2006).  When the evidence shows that a person who owns or controls a corporation uses the corporate form to "evade contract or tort responsibilities," a court may pierce the corporate veil "to correct [the] abuse."  *Winey v. Cutler*, 165 Vt. 566, 568 (1996) (mem.) (citing *United States v. Fidelity Capital Corp.*, 920 F.2d 827, 836–37 (11th Cir.1991)).  Further, a court may disregard the corporate form if the corporation is dominated by its owner(s) such that the corporation is essentially the alter ego of its owner(s).  *Id.* (citing *Wolfe v. United States*, 798 F.2d 1241, 1243 (9th Cir.1986)); see also *Agway, Inc. v. Brooks*, 173 Vt. 259, 262 (2001) (stating Vermont courts "will look beyond the corporation to its shareholders for liability . . . and pierce the corporate veil, where the corporate form has been used to perpetrate a fraud . . . and also where the needs of justice dictate.").  Even in an absence of fraud, a debtor corporation and an individual owner of all the stock may be treated "as identical" when justice will be served thereby.  *Agway*, 173 Vt. at 262–63 (citing *Roberts v. W.H. Hughes Co.*, 86 Vt. 76, 88 (1912)).

Defendants admit the following statements by Plaintiff, as set forth in her statement of additional undisputed material facts that she submitted along with her opposition to Defendants' motion for partial summary judgment:

> 8.  Pursuant to the testimony of Tucker Fossiano, Beacon Hill does not own the building where it is headquartered.  Beacon Hill owns some job trailers and other equipment however they are all used as collateral to secure a business line of credit.  Beacon Hill does not own any vehicles; it has one vehicle that is financed with no equity and one that is leased.  Beacon Hill has one business checking account that had a negative $738 balance at the time of Tucker Fossiano's deposition.  Beacon Hill had an SBA small business loan which matured but Beacon Hill was not able to pay off.  In order to pay off that loan Tucker Fossiano took out a second mortgage on his personal residence to pay the loan.
>
> 9.  Tucker Fossiano does not own any vehicles individually and drives Beacon Hill leased or financed vehicles.

10. Tucker Fossiano and David Fossiano are the only salaried employees of Beacon Hill.

11. If there was ever a judgment against Beacon Hill Builders there would be no funds available to pay it.

Defendants asserts that Plaintiff presents no evidence of fraud or the individual defendants' personal use of corporate funds to justify piercing the corporate veil and holding David and Tucker Fossiano personally liable in the event Plaintiff is awarded damages in this case. However, Defendants admit that (1) Tucker drives BHB vehicles for his personal use, (2) Tucker took out a mortgage on his residence to pay off a BHB loan; (3) the BHB bank account was overdrawn when Tucker gave his deposition; and (4) David is the vice president of BHB.[3] Although Plaintiff has presented no evidence of fraud, these admitted facts could be evidence of undercapitalization, the personal use of corporate assets, treating the corporation as an alter ego, and the failure to observe corporate formalities. Thus the court cannot, as a matter of law, rule out piercing the corporate veil. The record contains insufficient facts to decide this issue one way or the other on summary judgment.

Although the court is granting Defendants' motion for summary judgment as to Plaintiff's claims for negligence, fraud, and misrepresentation, Plaintiff has other claims that are not affected by this ruling, including breach of contract, breach of implied warranty against structural defects, breach of implied warranty of good workmanship, unjust enrichment, and noncompliance with the Vermont RBES. As a result, the court denies Defendants' request to dismiss Tucker and David as individual Defendants from this lawsuit.

Conclusion

For the reasons set forth above, the court:

(1) grants Defendants' motion for summary judgment as to Counts IV-VIII of Plaintiff's second amended complaint and

(2) denies Defendants' request that Tucker Fossiano and David Fossiano be dismissed from this lawsuit.

Electronically signed pursuant to V.R.E.F. 9(d) on November 16, 2021 at 1:32 PM.

_Mary Miles Teachout_

Mary Miles Teachout
Superior Court Judge

---

[3] Defendants state in their reply memorandum that Tucker is the sole shareholder of BHB, but they do not cite any evidence to support this.