Filed 01/29/26

| | | |
|---|---|---|
| **VERMONT SUPERIOR COURT**<br>Washington Unit<br>65 State Street<br>Montpelier VT 05602<br>802-828-2091<br>www.vermontjudiciary.org |  | CIVIL DIVISION<br>Case No. 22-CV-03928 |

**Kingsbury Companies, LLC v. Winton Goodrich et al**

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment  (Motion: 16)
Filer:        Matthew Preedom
Filed Date:   September 30, 2025

The motion is GRANTED IN PART and DENIED IN PART.

Mr. Winton Goodrich and his spouse, Defendant Ms. Valerie Goodrich, hired Plaintiff Kingsbury Companies LLC to install a new septic system and leach field at their house, which involved bringing offsite sand and soil to their yard.[1]  Shortly after the work was complete, a noxious and destructive plant known as Japanese knotweed that had not been present in the yard previously appeared.  Believing Kingsbury introduced the knotweed with the offsite fill brought to the site, the Goodriches demanded that Kingsbury eradicate the knotweed.  The parties were unable to agree on a mutually acceptable resolution, however, the Goodriches refused to pay for the new septic system, and Kingsbury filed this suit seeking, in the amended complaint (filed Aug. 31, 2023), damages for breach of contract and a violation of the Prompt Pay Act, 9 V.S.A. §§ 4001–4009.  In response, Ms. Goodrich, in an amended counterclaim (filed Oct. 10, 2023), has filed 6 claims against Kingsbury: breach of contract (count 1); negligence (count 2); nuisance (count 3); fraud (count 4); breach of the covenant of good faith and fair dealing (count 5); and violation of the Consumer Protection Act (CPA), 9 V.S.A. §§ 2451–2494z (count 6).  She also seeks exemplary and punitive damages.  Each such claim is predicated on the introduction of knotweed to the Goodrich property.

Kingsbury has filed a motion for summary judgment as to all counterclaims.  It argues: (a) it had no contractual duty to prevent the accidental spread of knotweed; (b) the good faith and

---

[1] Mr. Goodrich was a party to this case at inception.  He subsequently died, and no successor has been substituted.  See V.R.C.P. 25(a) (substitution in the event of death).  Additionally, R.E. Tucker, Inc., alleged to have supplied the "sand, soil and other materials" at the heart of the dispute, has been dismissed from this case as a defendant.  Accordingly, the sole parties to this case are Plaintiff Kingsbury and Defendant Ms. Goodrich.

1

fair dealing claim fails because it is merely a reframing of the breach of contract claim; (c) the economic loss rule bars the negligence and nuisance claims; (d) in any event, nuisance law cannot apply in these circumstances; (e) the fraud claim fails because there is no evidence that Kingsbury misrepresented any material fact, much less intentionally, or that Ms. Goodrich relied on any misrepresentation; (f) there is no evidence of any CPA violation; and (g) to the extent that Ms. Goodrich is seeking exemplary or punitive damages, there is no evidence that could possibly warrant such an award. Ms. Goodrich opposes summary judgment, arguing that each claim is well-pleaded, and the facts are disputed.

### I. *Procedural Standard and Threshold Issues*

Summary judgment procedure is "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate if the evidence in the record, referred to in the statements required by V.R.C.P. 56(c), shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. V.R.C.P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413.

A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375.

The court notes that while Kingsbury's statement of undisputed facts scrupulously conforms to the requirements of Rule 56(c), Ms. Goodrich's does not. In particular, Rule 56(c)(2) (emphasis added) requires as follows:

> A nonmoving party responding to a statement of undisputed material facts and asserting that a fact is genuinely disputed, that the materials cited do not

> establish the absence of a genuine dispute, or that the moving party cannot produce admissible evidence to support the fact, must file a paragraph-by-paragraph response, with specific citations to particular parts of materials in the record . . . . *To the extent that the responding party asserts that there are additional material facts that should be considered, the party may file a separate and concise statement of additional material facts in numbered paragraphs, with specific citations to particular parts of admissible materials in the record.*

V.R.C.P. 56(c)(2). The Reporter's Notes for the 2022 amendments to the Rule are clear that the purpose of the emphasize language is "to separate out statements of often immaterial or nonresponsive additional facts and, to discourage the not-uncommon practice of obfuscating the terms of a reply by adding a host of such additional facts." Id. at Rptr. n. 2022 Amend.

Ms. Goodrich filed one "response" (filed Nov. 12, 2025) to Kingsbury's statement of facts but filed no separate statement seeking to assert additional material facts. The response itself reproduces each of Kingsbury's asserted facts beneath which appears lengthy argument, numerous *general* citations to the record that are not reasonably calculated to lead the court to *specific* evidence, and numerous "facts" or mere conclusory allegations of fact that are devoid of any indication of record support.[2] Nor did Ms. Goodrich seek to correct her procedural informality once pointed out and objected to by Kingsbury.

The court has no obligation to scour the record in search of evidence that may reveal a genuine dispute of fact, and it declines to do so in this case. See V.R.C.P. 56(e) (setting out potential consequences for failing to properly support or address a fact); *Webb*, 2007 VT 65, at ¶¶ 4–6; see also *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("General principles of advocacy suggest, and we have often repeated, that a party contesting summary judgment has a responsibility under such rules to 'highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute.' It is reasonable to assume that just as a district court is not required to 'scour the record looking for factual disputes,' it is not required to scour the party's various submissions to piece together appropriate

---

[2] For example, Ms. Goodrich repeatedly cites generally to Exhibits O and R. Exhibit O is the 97-page deposition transcript of Ms. Goodrich. Exhibit R is the 148-page deposition transcript of Ian Graham. The court will not wade through such lengthy exhibits without guidance from Ms. Goodrich as to where the relevant portions may be. *Webb v. Leclair*, 2007 VT 65, ¶¶ 4–6 (mem.) ("Forcing courts to sift through nearly fifty pages of narrative in order to find contested and uncontested facts is precisely the type of "needle in a haystack" search the rule is meant to avoid. "); see also *Stone v.. Town of Irasburg*, 2014 VT 43, ¶ 56; *Travelers Ins. Co. v. Demarle, Inc., USA*, 2005 VT 53, ¶ 6 (mem.)

3

arguments. A court need not make the lawyer's case." (citations omitted)). Accordingly, the court considers the well-supported facts in Kingsbury's statement undisputed where Ms. Goodrich has failed to contest them according to the rule, and to the extent that her opposition seeks to introduce myriad additional facts without presenting them cogently in a separate statement, the court disregards them. Similarly, the court disregards the argument and mere conclusory allegations in her response to Kingsbury's statement of facts. See *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10 (noting that courts are not required to accept "conclusory allegations or legal conclusions masquerading as factual conclusions.").

## II. *Undisputed facts*

The basic undisputed facts are as follows. The Goodriches hired Kingsbury to install a new septic system and leach field at their house. Doing so involved bringing offsite sand and soil to their yard. Shortly after work was complete, knotweed began to appear. Prior to this installation, the Goodriches' yard had no knotweed. It is reasonably inferable, if not entirely certain, that the knotweed arrived with the fill. Knotweed can be destructive. It is difficult to eradicate, and it is common in central Vermont.[3] There is no evidence that the contract between the parties made any reference whatsoever to knotweed or weeds in general that might be brought to the property with offsite-sourced fill. Nor is there any evidence that Kingsbury made any such representations or that the topic came up at all until *after* the construction was complete and the knotweed appeared. There is no evidence that Kingsbury knew or reasonably should have known that the fill it imported to Ms. Goodrich's yard was contaminated with knotweed. It is clear, however, that Kingsbury took no proactive steps to ensure that the fill would not be contaminated with knotweed.

## III. *Analysis*

Kingsbury argues that all of Ms. Goodrich's claims fail as a matter of law. The court agrees in part—except for the core breach of contract claim. The court reasons as follows.

---

[3] Knotweed is an invasive species, native to Asia found throughout Vermont, but the Court takes judicial notice that it is not the only aggressive and invasive plant found in Vermont. See, e.g., UVM Extension, Vt. Dept. of Forests, Parks and Recreation, et al., Gallery of Land Invasives, Terrestrial Invasive Plants, at https://www.vtinvasives.org/gallery-of-land-invasives (last visited Jan. 28, 2026) (listing forty-five different invasive species with varying degrees of noxious qualities found in Vermont).

A.    *Breach of contract*

To the extent that Ms. Goodrich argues that there was some kind of breach of an express term of the contract related to knotweed, her claim necessarily fails as a matter of fact and law.[4] There is no evidence of any express term, sounding in warranty or otherwise, that Kingsbury arguably breached by inadvertently importing knotweed to her yard in fill. There simply is no evidence in the record that knotweed was on anyone's mind until well after the contract was consummated.

Ms. Goodrich has, however, cogently pled a claim premised on an implied warranty of workmanlike performance. As one treatise explains:

> Contractual duties extend by law far beyond those seen within the "four corners" of the written contract document, and must be searched for within the hidden veils of the law. Those duties are the additional terms and conditions implied in every construction contract. It is well settled that "[a] contract includes not only the promises set forth in express words, but in addition all such implied provisions as are indispensable to effectuate this intention of the parties and arise from the language of the contract and the circumstances under which it was made."

3 Bruner & O'Connor Construction Law § 9:1 (footnotes omitted). One of the principal such duties requires that "the contractor will construct the project pursuant to its design with reasonable diligence and in a good and workmanlike manner." *Id*.[5]

Kingsbury held itself out as having expertise in the installation of septic systems, and there is no evidence of any effort to disclaim any implied warranties in the parties' contract. Nor

---

[4] To the extent that Ms. Goodrich argues in opposition that the septic system and leach field was defectively installed for some reason (particularly, the size of the tank) apart from the knotweed issue, the court disregards that argument. No such alleged breaches appear in her counterclaim or are before the Court with sufficient notice under V.R.C.P. 8. *Bock v. Gold*, 2008 VT 81, ¶ 14 (Skoglund, J. concurring) ("Our pleading requirements are minimal, but they are not nonexistent. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief.") (quoting V.R.C.P. 8).

[5] See also Construction Litigation Handbook 3d § 14:2 (3d ed.) ("Many cases have held that when a contractor holds itself out to be specially qualified to do a particular type of work, there is an implied warranty that the work will be done in a workmanlike manner."); Annotation, *Breach of Warranty in Sale, Installation, Repair, Design, or Inspection of Septic or Sewage Disposal Systems*, 50 A.L.R.5th 417, § 10[a], [b]; *Kubby v. Crescent Steel*, 466 P.2d 753, 754 (Ariz. 1970) ("A contractor impliedly warrants that he will perform in a workmanlike manner even though the contract itself does not contain an express warranty of good workmanship."); *Gosselin v. Better Homes, Inc*., 256 A.2d 629, 639–40 (Me. 1969) ("Notwithstanding the absence of an express provision respecting the quality of the work to be done or the manner of its performance in any oral or written construction contract, the law implies therein an undertaking to perform the work in a reasonably skillful and workmanlike manner, having regard to the general nature and situation of the projected object and the purpose for which it was manifestly designed."); *Wiersema v. Workman Plumbing, Heating & Cooling, Inc.,* 409 N.E.2d 159, 161 (Ill. Ct. App. 1980).

is there any contention that the law of Vermont would not imply a warranty of workmanlike performance into the contract in this case. See, e.g., *Peters v. Mindell*, 159 Vt. 424, 430 (1992) (third-party septic installer liable to home seller in indemnity if buyer's implied warranty claim (defective septic) against seller succeeds on remand); see also *S. Burlington Sch. Dist. v. Calcagni-Frazier-Zajchowski Architects, Inc.*, 138 Vt. 33, 44 (1980) ("'In the obligation assumed by a party to a contract is found his duty, and his failure to comply with the duty constitutes a breach.' In addition, accompanying every contract is an implied duty to perform with care, skill, reasonable expedience and faithfulness." (citation omitted)).

Whether the introduction of knotweed or similar invasive to the site is a breach of the implied warranty is another question. In the court's view, however, that question is not fairly presented in Kingsbury's principal brief. In the principal brief, Kingsbury nominally mentions the implied warranty claim but then focuses primarily on any claim premised on the express terms of the contract and whether there is any applicable duty. Then, in the reply, Kingsbury delves deeply into the implied claim for the first time, arguing that it requires expert testimony that Ms. Goodrich has never disclosed. An issue is not fairly raised for the first time in a reply brief because that robs the opposing party of a fair chance to respond. See *Maynard v. Travelers Ins. Co.*, 149 Vt. 158, 160 (1987) ("Our law is clear that issues not raised in an appellant's original brief may not be raised for the first time in a reply brief."); see also *Titran v. Ackman*, 893 F.2d 145, 148 (7th Cir. 1990) ("When a party moves for summary judgment on ground A, the opposing party need not address grounds B, C, and so on; the number of potential grounds for (and arguments against) summary judgment may be large, and litigation is costly enough without requiring parties to respond to issues that have not been raised on pain of forfeiting their position.").

The court thus concludes that Ms. Goodrich's contract claim is limited to whether the implied warranty of workmanlike performance was breached, and that claim, untested by Kingsbury's motion, survives summary judgment. Kingsbury is, however, entitled to partial summary judgment on any portions of Ms. Goodrich's contract claim that rely on either an express warranty or terms as Ms. Goodrich's breach of contract claims are not supported by either the facts or the law on these grounds.

B.    *Negligence and nuisance*

Kingsbury argues that the economic loss rule bars Ms. Goodrich's negligence and nuisance claims. The court agrees.

The economic loss rule generally preserves the distinction between contract and tort law by prohibiting "recovery in tort for purely economic losses." *Long Trail H. Condo. Ass'n v. Engelberth Const., Inc.*, 2012 VT 80, ¶ 12. "In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining." *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30. "The determining factor in deciding whether to apply the economic-loss rule is not whether privity exists but rather whether there is 'a duty separate and apart from a contractual duty.'" *Walsh v. Cluba*, 2015 VT 2, ¶ 27. As the *Walsh* decision elaborates,

> Negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm. The physical harm may be to property rather than persons, but injury to the product or property that is the subject of a contract is generally considered a disappointed economic expectation for which relief lies in contract rather than tort law.

*Id*. ¶ 28 (internal quotations and citation omitted).

This is precisely the case here. There is a contract, and there is a contract claim to the effect that Kingsbury's performance of the contract was deficient and harmed Ms. Goodrich's property. Her negligence and nuisance claims are not predicated on duties separate and apart from the contract. Rather, they are mere tort versions of the contact claim. The economic loss rule bars them.

With this determination, it is unnecessary to address the other arguments raised as to the nuisance claim, and Kingsbury is entitled to partial summary judgment on all tort claims.

C.    *Fraud*

Assuming that Ms. Goodrich's fraud (intentional misrepresentation) claim could be construed to spring from a duty separate and apart from the contract, and thus not be barred by the economic loss rule, the claim fails on the merits as evinced by the present record. "To

7

maintain a cause of action for fraud, plaintiff must demonstrate five elements: '(1) intentional misrepresentation of a material fact; (2) that was known to be false when made; (3) that was not open to the defrauded party's knowledge; (4) that the defrauded party act[ed] in reliance on that fact; and (5) is thereby harmed.' Failure to prove any one of the five elements defeats the fraud claim." *Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 13 (citation and footnote omitted).

Ms. Goodrich does not point to any representations, much less intentional misrepresentations, about knotweed or whether the offsite fill might introduce unwelcome weeds, on which she relied. Her attempt to manufacture a misrepresentation is unavailing as it relies on characterization and ungrounded, rather than reasonable, factual inferences.

In brief, Ms. Goodrich posits that Kingsbury held itself out to have expertise in septic installations. This fact is not disputed. From this fact, however, she seeks to draw the inference that an expert septic installer knows about the dangers of knotweed. This is an inference that is not supported by the record as there is no evidence as to what constitutes the knowledge base of expert septic installers. *In re Allen*, 2014 VT 53, ¶ 23 (holding a reasonable inference is premised on probability). Her argument continues that an expert septic installer, with this knowledge of knotweed, would have recognized the danger and would not have introduced knotweed to her yard. Therefore, Kingsbury misrepresented its expertise or ability to competently complete the job. This is simply tautological reasoning and is not proof or reasonable inference.

This reasoning further strains under examination. In addition to the issues noted, the Court finds that the record does not indicate that any of Kingsbury's representations about its expertise in septic installation corresponded to a specific standard that would necessarily include certain criteria or qualifications. Second, the record does not demonstrate that expertise in septic installation necessarily includes knowledge of invasive or aggressive horticultural species as a core function of septic design and installation. Third, any level of expertise or knowledge does not guarantee an outcome and expertise, even if it is there cannot guarantee against breach or failure. Fourth and finally, the reasoning does not point to a material fact that Kingsbury knew was false and nevertheless misrepresented to Ms. Goodrich. Giving all reasonable doubt and

8

inference to Ms. Goodrich, Kingsbury's statement is simply a statement of opinion about its ability and not a factual statement. Presuming for purposes of the present motion that Kingsbury lacked some type of knowledge that constitutes general septic expertise, the representation of expertise did not constitute the type of material fact on which the expression of an opinion gives rise to fraud. See *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 133 (1993) (citing *Proctor Trust Co. v. Upper Valley Press, Inc.*, 137 Vt. 346, 350 (1979) ("mere expressions of opinion" cannot be basis for fraud action)).

Based on the foregoing, there is no evidentiary basis for this claim, and Kingsbury is entitled to partial summary judgment on Ms. Goodrich's fraud claims.

### D. *Breach of the covenant of good faith and fair dealing*

Kingsbury argues that Ms. Goodrich's breach of the covenant of good faith and fair dealing claim is merely her breach of contract claim impermissibly recast under the covenant and, to the extent that it is based on post-contamination interactions, nothing violated the covenant.

"The covenant of good faith and fair dealing is implied in every contract." *Tanzer v. MvWebGrocer, Inc.*, 2018 VT 124, ¶ 32 (citation omitted). "We have explained that the covenant acts to protect the parties to a contract, and to ensure that they 'act with faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Id*. "A breach of the covenant may be shown by evidence that a party to a contract acted in such a way as to 'violate[] community standards of decency, fairness or reasonableness, demonstrate[] an undue lack of diligence, or [take] advantage of [other parties'] necessitous circumstances.'" *Id*. ¶ 33. However, "[w]here a party alleges both breach of contract and breach of the implied covenant of good faith and fair dealing, dual causes of action are permitted only where the different actions are premised on different conduct—'we will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when the plaintiff also pleads a breach of contract based upon the same conduct.'" *Id*.

Ms. Goodrich's breach of good faith and fair dealing claim is described in the counterclaim as follows:

48. The Goodriches incorporate by reference all previous paragraphs.

49. Kingsbury had a duty to not do anything that would or will have the effect of destroying or injuring the right of the Goodriches to receive the fruits or benefits of the contract.

50. Kingsbury, by bringing Japanese knotweed (Polygonum cuspidatum) onto the property and putting it in the soil and lawn, breached that duty.

51. The parties met at the Property on multiple occasions. Kingsbury introduced dangerous, damaging, and uncontrollable Japanese knotweed (Polygonum cuspidatum) to the Goodriches' home and failed to eradicate and/or limit the spread of the invasive at the Goodriches' home.

52. As a direct and proximate result of Kingsbury's actions while carrying out the contact, Kingsbury has destroyed or injured the Goodriches' right to receive the fruits or benefits of the contract and the Goodriches have sustained and will sustain financial harm and other various damages as outlined above.

Amended Counterclaim at 8–9 (filed Oct. 10, 2023). Most of this claim is identical to the breach of contract claim and is foreclosed for that reason.

To the extent that the claim also relates to post-contamination conduct, as a matter of law, Ms. Goodrich has failed to come forward with any evidence of a potential violation. The record shows that after the Goodriches complained about knotweed, the parties attempted to find a mutually acceptable solution. When that proved elusive, and the Goodriches continued to refuse to pay the contract amount, Kingsbury filed suit. Litigation often is unnecessary to resolve legal disputes, but there is no palpable way in which Kingsbury's initiation of this suit possibly could be construed to have violated community standards of decency, fairness or reasonableness. It simply resorted to the courts once, in its view, negotiations between the parties broke down.

To this extent, the portions of this claim that extend beyond the breach of contract claim is unsupportable as a matter of law, and Kingsbury is entitled to partial summary judgment on the breach of the covenant of good faith and fair dealing claims.

E.     *Violation of the Consumer Protection Act (CPA), 9 V.S.A. §§ 2451–2494z*

Kingsbury argues that Ms. Goodrich's CPA claim fails on the merits. Ms. Goodrich describes her CPA claim with few words:

53. The Goodriches incorporate by reference all previous paragraphs.

54. Kingsbury's actions as described in the foregoing paragraphs constitute unlawful, unfair, and deceptive acts or practices under 9 V.S.A. §2451, et seq.

Amended Counterclaim at 9 (filed Oct. 10, 2023).

"The three elements of a [CPA] claim are as follows: '(1) there must be a representation, practice, or omission likely to mislead the consumer; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is, likely to affect the consumer's conduct or decision with regard to a product.'" *Gregory v. Poulin Auto Sales, Inc.*, 2012 VT 28, ¶ 12, 191 Vt. 611 (citation omitted).

To the extent that this claim is predicated on some kind misrepresentation about knotweed or that the fill would be free of weeds, it fails for the same reasons that the intentional misrepresentation claim does.

To the extent that it is based on Ms. Goodrich's disappointed expectation that because Kingsbury projected an appearance that it had suitable expertise, but it really did not, this claim is not actionable. In *Winey*, the Vermont Supreme Court explained that "Our cases have often drawn a distinction between a statement of fact and a statement of opinion, holding that misrepresentation of the former can be fraud, but misrepresentation of the latter cannot." 161 Vt. at 133. "This generalization is not, however, without exceptions. Misrepresentation of opinion can be the basis of a fraud claim if it is part of a scheme to defraud." *Id*.

Regardless of whether Kingsbury's performance was deficient, there is no allegation or evidence of any scheme to defraud or materially mislead in this case. As the *Winey* Court went on to say, "With respect to promises to perform, we have held that misrepresentations about future actions can be fraudulent if defendant, at the time of the statement, intends to act differently from the promise." *Id*. Again, there is no nonconclusory allegation or evidence that Kingsbury ever made any promise to perform while secretly intending to act differently than as promised.

Moreover, Ms. Goodrich's cogent claim in this case is that there was a contract with Kingsbury and, in its performance of the contract, Kingsbury breached an implied term. That is a breach of contract claim, not a CPA claim. See *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 28, 181 Vt. 513 (allegations of "poor construction" insufficient to support a CPA claim); *Winey*, 161

11

Vt. at 136 ("We have cautioned against confusing principles of contract with principles of fraud so that the elements of fraud are made out by a mere breach of contract."); *Bevins v. King*, 147 Vt. 203, 204 (1986) (independent cause of action for fraud must be predicated on fraud that is "extrinsic" to the contract).

Based on this analysis, the Court finds no factual basis for this claim, and Kingsbury is entitled to partial summary judgment as a matter of law on this issue.

F.       *Exemplary or punitive damages*

To the extent that Ms. Goodrich seeks exemplary damages under the CPA, her CPA claim has no merit, so no statutory exemplary damages are potentially available.

Her pursuit of more general punitive damages fares no better. "The purpose of punitive damages is to punish conduct that is morally culpable to the degree of outrage frequently associated with crime." *Beaudoin v. Feldman*, 2018 VT 83, ¶ 18, 208 Vt. 169 (quotation marks omitted). To recover, a plaintiff must prove (1) "wrongful conduct that is outrageously reprehensible," and (2) "malice, defined variously as bad motive, ill will, personal spite or hatred, reckless disregard, and the like." *Id*. (quotation marks omitted)). As the Vermont Supreme Court has explained, "[r]eprehensibility is to be determined by reference to whether: 'the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.'" *Shahi v. Madden*, 2008 VT 25, ¶ 26, 183 Vt. 320 (citation omitted).

"[A]ctual malice may be shown by conduct 'manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights.'" *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 56, 179 Vt. 167 (citation omitted). However, "intentional, wrongful, and even illegal conduct will not justify punitive damages unless the evidence supports an inference of 'bad motive' evincing a sufficient 'degree of malice.'" *Id.*

At best, the record shows that, while installing a septic system, Kingsbury inadvertently deposited fill that was contaminated with knotweed and may not have taken reasonable steps to avoid such contamination. That is it. This case does not remotely indicate any possibility of an award of punitive damages as a matter of law. As such, Kingsbury is entitled to partial summary judgment as a matter of law on the facts underlying Ms. Goodrich's punitive damage claims.

## Order

For the foregoing reasons, Kingsbury's motion for summary judgment is **Granted in part and Denied in part.** Kingsbury's motion for summary judgment on Ms. Goodrich's counterclaims for breach of the express terms of the contract, negligence, nuisance, fraud, breach of the covenant of good faith and fair dealing, and consumer fraud is **Granted**, and these counterclaims are **Dismissed** as a matter of law. Kingsbury's motion for summary judgment on Ms. Goodrich's counterclaim for breach of contract predicated on the implied warranty of workmanlike performance is **Denied**, and this claim survives.

The Court will set this matter for a status conference with the parties to address what steps remain in discovery and mediation and when the remaining claims will be ready for trial.

Electronically signed on 1/28/2026 7:29 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge

13